[No. 14917.   Department One. — February 17, 1893.]

# THE COUNTY OF LOS ANGELES, Appellant, *v.* THE COUNTY OF ORANGE, Respondent.

Counties — Creation of New County — Power of Legislature — Rights and Obligations of Old County. — The legislature, except as restrained by constitutional limitations, may change the boundaries and extent of counties within the state, consolidate two or more into one, or divide and create new counties out of the territory of one or more previously existing ones. Upon the creation of a new county out of the territory of another, the legislature, in the absence of constitutional restrictions, may make such provision with reference to the public property and debts, or their division, as to it may seem just; and in the absence of any provision in reference thereto, the old county will be entitled to retain all public property and assets, except such public buildings as lie within the territory of the new, and will also be liable for all its prior obligations.

Id. — Act Creating Orange County — Liability to Los Angeles County for Indebtedness. — Under section 7 of the act of the legislature of March 11, 1889, creating the county of Orange out of a portion of the county of Los Angeles, which provides that commissioners are to determine the indebtedness of the county of Los Angeles "existing at the time this act takes effect," the act itself declaring that it "shall take effect and be in force from and after the date of its passage and approval," the county of Orange is liable to the county of Los Angeles only for the indebtedness found to be existing on March 11, 1889, and is not chargeable with moneys expended by the latter county after that date, and prior to the organization of the new county, though expended within the territory of the new county.

Id. — Construction of Constitution — Apportionment of Indebtedness — Division of Assets — Power of Legislature. — Section 3 of article XI. of the constitution, which provides that "every county which

shall be enlarged or created from territory taken from any other county or counties shall be liable for a just proportion of the existing debts and liabilities of the county or counties from which such territory shall be taken," relates only to the indebtedness of the county, and does not require any division of the assets or property of the old county, but the disposition of these matters is left to the determination of the legislature in each particular case; and it is competent for the legislature, in dividing the property and assets of the county, to fix upon any date which it chooses to select as the time for ascertaining the amount and value of such assets and property, as well as for determining, in connection therewith, the "just proportion" of the debts and liabilities to be assumed by the new county.

APPEAL from a judgment of the Superior Court of Ventura County.

The facts are stated in the opinion of the court.

*District Attorney James McLachlan, Waldo M. York,* and *Byron M. Marble,* for Appellant.

*District Attorney F. W. Sanborn,* and *A. W. Hutton,* for Respondent.

HARRISON, J. — The county of Orange was created under the provisions of an act of the legislature approved March 11, 1889, and its organization was completed August 2, 1889. By the provisions of section 7 of the act, commissioners were appointed to adjust the respective liabilities of the two counties, and they made their report, fixing the amount of the liability of Orange County to the county of Los Angeles as of the eleventh day of March, 1889; and also made a supplemental report, that in addition to the indebtedness found to exist on that date, " moneys had been advanced after March 11, 1889, by Los Angeles County to Orange County, in the sum of $11,375.42; and that, as a matter of equity, that amount should be refunded by Orange County to Los Angeles County." These advances consisted of moneys expended in the construction of a bridge, and of certain transfers to different road district and school district funds within the boundaries of Orange County. The county of Los Angeles presented its claim for this

sum to the board of supervisors of Orange County, and its payment being refused, brought this action for their recovery as for moneys paid and advanced by it in behalf of Orange County. A demurrer to the complaint was sustained, and from the judgment rendered thereon the plaintiff has appealed.

Counties are merely local subdivisions of the state, created by the legislature for governmental purposes, and are denominated public corporations for the reason that they are but parts of the machinery employed in carrying on the political affairs of the state. The legislature, except as restrained by constitutional limitations, may change their boundaries and extent, consolidate two or more into one, or divide and create new counties out of the territory of one or more previously existing ones. It has been established by an unvarying line of decisions that upon the creation of a new county out of the territory of another, the legislature, in the absence of constitutional restrictions, may make such provision with reference to the public property and debts, or their division, as to it may seem just; and that in the absence of any provision in reference thereto, the old county will be entitled to retain all public property and assets, except such public buildings and structures as lie within the territory of the new, and will also be liable for all its prior obligations. (*Hampshire* v. *Franklin*, 16 Mass. 86; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307; *Depere* v. *Bellevue*, 31 Wis. 120; 11 Am. Rep. 602; *Hughes* v. *Ewing*, 93 Cal. 414; Dillon on Municipal Corporations, secs. 188, 189.)

Section 3 of article XI. of the constitution of this state provides that " every county which shall be enlarged or created from territory taken from any other county or counties shall be liable for a just proportion of the existing debts and liabilities of the county or counties from which such territory shall be taken." The mode of determining the " just proportion " of the debts and liabilities for which the new county shall be liable is not prescribed in the constitution, but is left to the deter-

mination of the legislature in each particular case; and by section 7 of the act under consideration the legislature provided that commissioners should be appointed from each of the two counties, who should determine the indebtedness of Los Angeles County existing at the time the act took effect in the following manner: "They shall ascertain the total amount of indebtedness of Los Angeles County existing at the time this act takes effect, and also the total value of all assets of said county, including real estate, buildings and bridges erected or in progress of erection, money and solvent credits of whatever nature, and any other property belonging to the said county of Los Angeles. They shall also ascertain the assessed value of all property in Los Angeles County under the assessment made in 1888, and also the assessed value of the property under the same assessment assessed in the territory hereby set apart to form Orange County. They shall then find the balance of the total assets and indebtedness of Los Angeles County, and if there is a balance of indebtedness against said county, the same shall be divided between the two counties according to the following proportion: as the total assessed value of the property of Los Angeles County at the time of the taking effect of this act is to the total assessed value of the property in Orange County, so is the balance of said indebtedness, so as aforesaid ascertained, to the amount of said indebtedness to be assumed and paid by Orange County to Los Angeles County. Said commissioners shall then certify forthwith to the respective boards of supervisors of said counties of Orange and Los Angeles such amounts of the said indebtedness due from Orange County, together with the ascertained value of all bridges and other property estimated and reckoned among the assets of Los Angeles County, as aforesaid, erected or purchased by county funds, and situated in Orange County, which property shall be charged to the new county, and the amount thereof shall be an indebtedness to Los Angeles County, and shall thereupon become the property of said Orange County. In case said com-

missioners shall find a balance of assets of Los Angeles County over and above its liabilities, they shall belong to Orange County by the proportion aforesaid, and shall certify the same to the said boards of supervisors, together with the value of the bridges and other property as aforesaid; and if the amount of said balance of assets belonging to Orange County is less than the value of said property, then the difference between the two amounts shall be assumed and paid by Orange County to Los Angeles County; but if said amount is greater than the value of said property, then said Los Angeles County shall pay the difference between the two amounts to said Orange County."

As the provision of the constitution relates only to the indebtedness of the county, and does not require any division of the assets or property of the old county, the disposition of these matters remains within the scope of legislative provision; and in the absence of any such provision, the effect of creating a new county would be to give to the old county all the public property, except such as was situated in the territory embraced within the boundaries of the new county. As the legislature could divide the public property and assets of the county in such mode as it might choose, it was competent for it to fix upon any date which it might select as the time for ascertaining their amount and value, as well as for determining, in connection therewith, the "just proportion" of the debts and liabilities to be assumed by the new county. In the present instance, the legislature fixed the time when the act took effect as the proper period for ascertaining the amount of these assets and liabilities, and it cannot be held that the constitutional provision was violated in selecting that as the point of time at which to properly determine what would be a "just proportion" of the debts and liabilities to be assumed by the new county. It is not claimed that any of the indebtedness of the county accrued after that date, or that the amount of its debts or liabilities was greater

at the organization of the new county than it was at the passage of the act.

The items for which the present action is brought were expenditures made between the date of the passage of the act and the organization of the new county, but during all that time the territory within which these expenditures were made was a portion of Los Angeles County, and we must assume that the expenditures were made in the wise exercise of its control over that territory. It does not appear at what date after March 11, 1889, the moneys were expended; and it must be borne in mind that until after the election upon the question of a division of the county, it could not be known that any new county would be authorized. Until that time it was the duty of Los Angeles County to expend such moneys within the territory that afterwards became Orange County as might be needed. Until after the election upon the question of a division had been had, the moneys which were expended were for the benefit of Los Angeles County, and cannot be said to have been paid or advanced to or for the benefit of the county of Orange. The legislature may have considered that it would be necessary for the county of Los Angeles to expend money for municipal purposes within this territory; and as it was within its discretion to determine that it should bear the burden of any of the expenditures which it might thus make, the fact that it has made no provision for its reimbursement is indicative that it was not its intention that it should be reimbursed therefor.

It would violate all rules of construction to hold that when the legislature fixed the time when the act took effect as the point of time for ascertaining the amount of indebtedness, it intended those words to apply to the date when the county of Orange was organized. The commissioners are directed, in express language, to determine the indebtedness of said county "existing at the time this act takes effect," and the statute itself declares that the act "shall take effect and be in force from

and after the date of its passage and approval." There is nothing in the act itself, or in the subjects to which it relates, which requires, or would permit, any different construction to be given to those words from that which they express.

The judgment is affirmed.

PATERSON, J., and GAROUTTE, J., concurred.