(December 31, 1895.)

## WRIGHT v. KELLEY ET AL., COMMISSIONERS OF LOGAN COUNTY.

### [43 Pac. 565.]

MANDAMUS—WHEN WRIT WILL NOT ISSUE.—Writ of mandate will not issue where there is a plain, speedy, and adequate remedy at law.

WHERE WRIT MUST BE APPLIED FOR.—The writ must be applied for in the first instance from the district court, unless there appears some reason which renders it indispensable that application should be made directly to the supreme court.

AGAINST WHOM THE WRIT WILL ISSUE.—Where the writ is sought to compel the commissioners of a county to perform an official act, the respondents must be *de facto* officers of such county at the time such writ is to issue.

CONSTITUTIONALITY OF LEGISLATIVE ACT CANNOT BE DETERMINED IN MANDAMUS PROCEEDINGS.—The constitutionality of an act of the legislature cannot be determined collaterally by the court in an application for a writ of mandate by a private party to enforce a private right.

(Syllabus by the court.)

Original proceeding by *mandamus.*

Hawley & Puckett and Thomas G. Hailey, for Petitioner.

"*Mandamus* lies to compel the performance of an act enjoined by law." (Rev. Stats., 4977; High on Extraordinary Remedies, secs. 31, 323; Merrill on Mandamus, 134, and cases cited.) "Where a plain, specific duty is imposed on a public officer or body, and they refuse, or unreasonably neglect, to perform the duties required of them by law, they will be put in motion by *mandamus.*" (*School Dist. No. 2 v. School Dist. No. 1*, 3 Wis. 333.) *Mandamus* will lie to compel a board of county commissioners to pass on and audit claims against the county properly presented to them for allowance. (Rev. Stats., sec. 1759; Merrill on Mandamus, secs. 32, 34, 36, 111; 14 Am. & Eng. Ency. of Law, 147, note, 183, note, and cases therein cited.) The constitutionality of an act of the legislature may be raised upon *mandamus,* or its counterpart, prohibition. (14 Am. & Eng. Ency. of Law, 223; *State v. Stein,* 43 N. J. L. 542; *Legg v. Mayor etc.,* 42 Md. 203.)

Johnson & Johnson, for Defendant (George M. Parsons and Selden B. Kingsbury, of Counsel).

As to the petition for a writ of mandate against the three defendants named as commissioners of Logan county: The petition itself shows that these defendants are not, and were not at the time of the commencement of these proceedings, acting in that capacity, and that they probably will not again so act, "unless the said persons are by the orders of this court compelled to meet as a board of county commissioners of said Logan county." The petition, while it thus shows conclusively that these defendants are not thus acting, does not disclose whether any other persons are so acting, whether any other persons are *de facto* commissioners of Logan county. The petition tells us that since they qualified, in or prior to January, defendants have acted, but for what part of the time since the first Monday of January, we are not told; but we are told that they were not acting for a long time prior to the filing of the petition. We are told that they still constitute, and are, the board of county commissioners of said Logan county, that is, they are in law (for they are not acting as such), which is a mere legal conclusion. *Mandamus* will go only to officers *de facto*, for it is elementary that the right, title or possession of an office will not be tried collaterally on *mandamus*. (High on Extraordinary Remedies, sec. 37; Dixon, C. J., in *State v. Beloit*, 21 Wis. 280, 91 Am. Dec. 474; 2 Spelling's Extraordinary Relief, sec. 1386.) "*Mandamus* should not be issued, as a general rule, in cases where the right of the relator depends upon holding an act of the legislature unconstitutional." (14 Am. & Eng. Ency. of Law, 100.) Nor should it be allowed in cases involving numerous questions of law and fact, and where many acts of parties connected with the matter may be valid or void, depending upon circumstances and facts attending them at the time, and which parol proof is necessary to establish. (*United States v. Commissioner,* 5 Wall. 563; *People v. Stephens,* 2 Abb. Pr., N. S., 348; *Hall v. Supervisors,* 20 Cal. 591.) Or when it becomes necessary to decide on the constitutionality of a law involving the interests of third per-

sons. (*Smyth v. Titcomb,* 31 Me. 272; 4 Wait's Actions and
Defenses, 376; 4 Field's Lawyers' Briefs, 440; 14 Am. & Eng.
Ency. of Law, 100, 101; High on Extraordinary Remedies,
sec. 143; *Maxwell v. Burton,* 2 Utah, 599; *Alderton v. Binder,*
*Pistorious v. Stempel,* 81 Mich. 133, 45 N. W. 968; 2
Beach on Public Corporations, sec. 1563; 2 Spelling's Extra-
ordinary Relief, sec. 1536; *Smith v. Mayor etc.,* 81 Mich. 123;
45 N. W. 964; *Davis v. Superior Court,* 63 Cal. 581; *Fraser*
*v. Freelon,* 53 Cal. 644.) This demand is made by a private
party as the "party beneficially interested," and the question
is, Has he, as such private person, any right to the writ? His
demand is based on his desire to present to the respondents, as
the board of commissioners of Logan county, a claim against
Logan county. For what purpose? That it may be allowed
and be paid. He has no other right than that of payment.
But the law provides Blaine county is the successor of Logan
county, and that he may present his claim to the Blaine county
board, and provides for its allowance and payment by Blaine
county. A state may, without impairment of the obligation
of a contract, regulate, or even limit the remedies for the en-
forcement of that contract, provided that it does not take
away all remedies therefor, and that it leaves in force a sub-
stantial remedy. (Patterson's Federal Restraints on State
Action, sec. 61, p. 149, sec. 75, p. 179.) "Changes in the
form of action and modes of proceeding do not amount to an
impairment of the obligations of a contract, if an adequate
and efficacious remedy is left." (*Antoni v. Greenhow,* 107 U.
S. 774, 2 Sup. Ct. Rep. 91; High on Extraordinary Remedies,
sec. 436; *Linden v. Board of Supervisors,* 45 Cal. 6.) "A court
will not listen to an objection made to the constitutionality of
an act by a party whose rights it does not affect, and who has,
therefore, no interest in defeating it." (Cooley's Constitu-
tional Limitations, 6th ed., 196.) The solution of constitu-
tional questions is no reason for *mandamus* proceedings.
(High on Extraordinary Remedies, sec. 33; *Ewing v. Turner,*
2 Okla. 94, 35 Pac. 951-954, 955.) Where a public organ-
ization of a corporate or *quasi* corporate character has an ex-
istence in fact, and is acting under color of law, and its ex-

istence is not questioned by the state, its existence cannot be collaterally drawn in question by private parties. (*Burt v. Winona etc. R. Co.,* 31 Minn. 472,-18 N. W. 285, 289; 1 Dillon on Municipal Corporations, 4th ed., sec. 43a; Cooley's Constitutional Limitations, 254, 309, 310.) An action which involves the determination that a statute is unconstitutional certainly involves a judicial function. (*People ex rel. Failie v. Ferris,* 76 N. Y. 326.). "The court will never decide a question involving the constitutionality of a statute if the merits of the case in which it is involved can be determined without such decision." (*Parker v. State ex rel. Power,* 133 Ind. 178, 32 N. E. 840, 33 N. E. 119; Throop on Public Officers, secs. 628, 637; Mechem on Public Offices, sec. 318; *State v. Carroll,* 38 Conn. 449, 9 Am. Rep. 409; *Brown v. O'Connell,* 36 Conn. 432, 4 Am. Rep. 89; *Meagher v. Storey Co.,* 5 Nev. 244; *Ex parte Strang,* 21 Ohio St. 610; *Commonwealth v. McComb,* 56 Pa. St. 346; *State v. Bloom,* 17 Wis. 521; *Kirker v. City of Cincinnati,* 48 Ohio St. 507, 27 N. E. 898.) *Mandamus* will not lie to compel an officer to do an act which, without its command, it would not have been lawful to do. (*State v. Board of Commrs.,* 42 Kan. 739, 22 Pac. 735; *Rosenthal v. State Board of Canvassers,* 50 Kan. 129, 32 Pac. 129; *Johnson v. Lucas,* 11 Humph. 306; *State v. Judge,* 15 Ala. 740; *Gillespie v. Wood,* 4 Humph. 437; *Davis v. Porter,* 66 Cal. 658, 6 Pac. 746; *Sullivan v. Shanklin,* 63 Cal. 247; *Pack v. Supervisors,* 36 Mich. 377.)

This is a petition filed by plaintiff, Robert H. Wright, against the respondents, to compel them, as county commissioners of Logan county, to meet as said commissioners of Logan county, and to either reject or allow his bill against said county for the sum of thirty-six dollars. The petition alleges: That the respondents qualified as commissioners of Logan county, Idaho, on or about the first day of January, 1895. Afterward, to wit, on the fifth day of March, 1895, by an act of the legislature, Alturas and Logan counties were abolished, and Blaine county created out of and including all of the territory theretofore comprised in the two counties of Alturas and Logan aforesaid. That said Fred W. Gooding and Sidney Kelly, aforesaid, were

by the terms of said act made two of the commissioners of Blaine county, and, together with I. T. Osborne, constituted, and now constitute, the board of county commissioners of Blaine county. By section 7 of said act (Sess. Laws 1895, p. 33), it was provided that "all valid and legal indebtedness of Alturas and Logan counties shall be assumed and paid by the county of Blaine," as then and thereby constituted. It appears, then, that the alleged indebtedness of Logan county to this petitioner became and was the indebtedness of Blaine county, which contained all the territory of Logan and Alturas counties, as aforesaid. That, since the passage of said act of the legislature, said Sidney Kelly and Fred W. Gooding have qualified and acted as two of the county commissioners of Blaine county. That afterward, to wit, on or about the eighteenth day of March, 1895, an act, having theretofore been passed, was approved by the governor, creating the county of Lincoln, as is alleged, out of the territory which formerly constituted Logan county. The respondents appear, and demur to this petition, for the reason, as they say, that it does not state facts sufficient to entitle the petitioner to the relief sought. Demurrer sustained, and writ denied.

MORGAN, C. J.—In this case the writ of mandate is asked for in the first instance from this court. Writs of this character must be applied for in the first instance from the district court, unless reasons are given which render it indispensable that the writ should issue originally from this court (Rules Sup. Ct., rule 28, par. 5, 32 Pac. xii) ; and the sufficiency or insufficiency of said reasons will be determined by this court in awarding or refusing the writ. The petition gives as a reason for not applying for the writ in the first instance from the judge of the district court, that he is informed and believes such application would be unavailing, and further alleges that said judge has announced that he would consider said acts creating Blaine and Lincoln counties constitutional, until otherwise determined by the supreme court. We think this is no reason for neglecting to present this petition to the district court, in the first instance. It is the duty of each of the judges

of the courts of this state to hear and determine all cases presented to them, and of which they have jurisdiction, impartially, and with due and careful consideration of the law, and the evidence applicable thereto; and this court presumes, and it is the duty of litigants to presume, that this duty will be faithfully performed, and no attention should be paid to reports and rumors to the contrary.

Has this petitioner a cause of action as stated in his petition? He shows in his petition that at the time this writ was prayed for, and for some time prior thereto, the said Fred W. Gooding and Sidney Kelly, two of the alleged commissioners of Logan county, had ceased to act as such; that they both had accepted the office of "commissioner of Blaine county," so called, and qualified, and were acting as such. By the allegations of the petition, it appears that such office was utterly incompatible with the office of commissioners of Logan county, and this is true whether the county of Blaine was legally and constitutionally created and organized or not. These defendants were therefore *de facto* officers of Blaine county, and not in any sense *de facto* officers of Logan county. They had accepted the acts of the legislature creating and organizing the counties of Blaine and Lincoln as the law of the land, in accordance with the advice of this court in the case of *Hampton v. Dilley*, 3 Idaho, 427, 31 Pac. 807, wherein this court says: "It is therefore deemed advisable for every good citizen to obey whatever may be promulgated by the law-making power as law, until the same shall have been passed upon by the courts of the country in a legitimate and proper manner." The defendants must be *de facto* officers of Logan county at the time the writ is to be commanded to issue, otherwise, it would be nugatory and cannot issue. (High on Extraordinary Remedies, secs. 37, 49.) The petitioner has also a complete and adequate remedy in the presentation of his claim to the commissioners of Blaine county, which is charged with all the indebtedness of Logan county. Where this is the case, the writ will not lie. (High on Extraordinary Remedies, sec. 50.)

Again, we are asked to declare two acts of the legislature unconstitutional and void, in a petition for a writ of mandate

filed by a private citizen against three persons, alleged to be county commissioners of Logan county, to compel them to pass upon a bill for work and labor performed for said Logan county. The only legitimate parties to the suit are the plaintiff and three persons named as defendants, who are not even *de facto* commissioners of Logan, as we have shown. Neither the commissioners of Blaine or Lincoln counties, so called, nor any other officer of said counties, are made parties to the application, nor could they properly be. Individuals in a private suit of the character of the one at bar cannot question the constitutionality of a solemn act of the legislature. Authorities in support of this principle are abundant, and founded in reason and justice. In *Re Short,* 47 Kan. 250, 27 Pac. 1005, the court says, referring to the organization of Garfield county: "Where a public organization of a corporate character has an existence in fact, and is acting under color of law, and its existence is not questioned by the state, its existence cannot be collaterally drawn in question by private parties." (Dillon on Municipal Corporations, sec. 43.) In the above cause two persons were imprisoned, and it was undertaken to show that the law organizing Garfield county was invalid. Here one of the dearest rights of the citizen was involved—the right of personal liberty; and yet the court says (*In re Short, supra*): "We do not think, however, that the question of the validity or invalidity of the organization of Garfield county can be raised in these collateral proceedings [*habeas corpus*] or in any collateral manner. The question can be raised only by the state by an action in *quo warranto*"; and a large number of authorities are cited to sustain, and which do abundantly sustain, the court. Cooley, in his Constitutional Limitations (pages 309 and 310), says: "These questions are generally questions between the corporators and the state, with which private individuals are supposed to have no concern." "In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the state as such." The reason for this rule is apparent and plain to the most ordinary understanding. If

one individual in a suit for the enforcement of a private right may raise the constitutionality of the organization of a county, another may do so, and this may extend to one hundred individuals, each thinking he has a new or better reason to present to the court why it should declare the law organizing a county unconstitutional; and thus the constitutionality of the law would continually be before the court in the most trivial suits, and the decision in none of the cases would be authoritative to destroy the *de facto* existence and organization of the county, because neither the county nor the state would or could be legally a party in any of the suits; and thus the public, consisting of all the citizens of the county or of the state, in no sense a party to the litigation, would have the validity of their corporate existence determined, or attempted to be determined. And the rule, we apprehend, would be no different if the constitution itself prescribed the manner of incorporation. Even in such a case, proof that a corporation was acting as such under legislative sanction would be sufficient evidence of right, except as against the state, and private parties could not enter upon any question of regularity (and in the case at bar the petitioner himself says in his petition that the county of Blaine is fully organized, and is acting under such county organization, with a full corps of officers). (Cooley's Constitutional Limitations, 310.)

*Mandamus* is not only an extraordinary, but in some respects a summary, remedy, and cannot be made an instrument for giving a court jurisdiction of litigation on collateral matters in an irregular way. (Spelling's Extraordinary Relief, sec. 1386.) Nor will this writ be granted in order to test collateral questions, nor can the question of the validity of an act of the legislature be raised by an application for *mandamus*. (Spelling's Extraordinary Relief, sec. 1440.) In the case of *State v. Douglas Co.*, 18 Neb. 506, 26 N. W. 315. The court says: "On an application for a *mandamus* against the county commissioners of Douglas county to compel them to call an election in the city of Omaha for twelve justices of the peace therein, there being six precincts, and alleging that the act reducing the number of justices in such city to three was unconstitutional

and void, held, that a court would not in that proceeding deter-
mine whether or not the act was in contravention of the constitu-
tion"—and proceed to say: "The presumption is that the legis-
lature has done its duty, and that an act passed by it is not in
conflict with the constitution; and it is the duty of all minis-
terial officers to obey it until the act is declared invalid." Such
questions should not be decided without a full hearing of par-
ties interested, and careful consideration of the entire subject
in a proper proceeding. *Mandamus* should not be issued, as
a general rule, in cases where the right of the relator depends
on holding an act of the legislature unconstitutional. (14 Am.
& Eng. Ency. of Law, 100; *People v. Supervisors of San Fran-
cisco,* 20 Cal. 591.) This was an application for *mandamus* to
compel the board of supervisors of the city and county of San
Francisco to issue a license to the relator to keep an intelligence
office in San Francisco. The court says: "The question
whether the first section of the law of 1861, authorizing the
board of supervisors of San Francisco to license intelligence.
offices, is unconstitutional, cannot be raised by the appellant
in this proceeding, nor when it becomes necessary to decide on
the constitutionality of a law involving the interests of third
persons." (*Smyth v. Titcomb,* 31 Me. 272.) *Mandamus* is an
appropriate remedy to be employed against delinquent tax col-
lectors to enforce the performance of their duties; nor, in such
cases, can the respondent, as a ministerial officer, object that the
act of the legislature authorizing the tax is unconstitutional,
since it is not within the province of such officers to determine
the constitutionality of laws; nor will the courts upon sum-
mary proceedings in *mandamus,* determine as to the constitu-
tionality of statutes fixing the rights of third persons not par-
ties to the suit. (High on Extraordinary Remedies, 143.) In
*People v. Stephens,* 2 Abb. Pr., N. S., 348, the court says: "I
may add, also, to the reasons above stated, that it is rarely, if
ever, proper to award *mandamus* in a case in which it can only
be done by declaring an act of the legislature unconstitutional.
That should be done in a more solemn mode of adjudication,
upon a full trial, all parties being in court." In *Maxwell v.
Burton,* 2 Utah, 595, the court says: "The validity of the law

which imposes the duty upon the respondent to enter the names
of the persons named in the register cannot be brought into
question in a proceeding of this kind; that is, by petition for
*mandamus.* We find that there is a law on our statute books
in reference to registration, compelling the respondent to do
what we are now asked to compel him to undo. We cannot,
for the purpose of this proceeding, inquire into its validity."

From the cases here cited, and a large number cited therein,
and which it is not necessary here to quote, it is apparent that
*mandamus* is not the proper proceeding in which to test the con-
stitutionality of an act of the legislature. The validity of the
act creating Blaine county cannot be brought in question when
neither the county itself, the officers thereof nor the state, are
made parties to the suit; nor could they be legally made parties
to this suit, as is shown above. But it is desired on the part of
the petitioner in this case to show the invalidity of the acts
creating and organizing Blaine county and Lincoln county by
the legislature, by means of the journals of the two houses show-
ing the manner in which these acts were passed. It is conceded
by both parties that these journals can only be examined by this
court in a proper proceeding, for the purpose of ascertaining
whether the provisions prescribed by the constitution were com-
plied with in the passage of the acts; and that the motives that
actuated the two houses of the legislature in the passage of these
acts, and of the governor in approving of them, cannot in any
manner, by means of the journals or otherwise, be brought in
question; and yet we are asked to consider the two acts as one,
simply because they relate to the same subject matter, and were
considered the same legislative day, and then to assume that
the motive and intention of the legislature in the passage of the
two acts was to violate the provisions of the constitution. It
would be highly improper for this court in this manner, or in
any manner, to question the motives actuating the legislature
in the passage of any particular act or acts. The fact that
these two acts passed through some of their stages or all of them,
on the same legislative day, has no significance. By an ex-
amination of the journal, we will, undoubtedly, find many acts
considered by the legislature on the same day, and relating to
the same subject matter. It will scarcely be seriously contended

that any two of these acts, relating to the same subject matter, should be by this court taken, to be and considered as one act, for the purpose of assuming that the legislature was actuated by improper motives in the passage of the acts; and that the intention was to avoid some of the provisions of the constitution. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional or statutory provision, which comes within the judicial cognizance. The protection against unwise or oppressive legislation within constitutional bounds is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people, in their sovereign capacity, can correct the evil, but courts cannot assume their rights. The court cannot run a race of opinions upon points of right, reason and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government being *prima facie* valid must be enforced, unless restrictions upon legislative authority can be pointed out in the constitution, and the case shown to come within them in a proper action; nor can this court hunt for pretexts, nor assume improper motives on the part of the legislature, nor combine different and distinct acts relating to the same subject matter, in order to afford an excuse to declare such acts unconstitutional. It is only in extreme cases, and in cases where the violation of the constitution is so clear that it does not admit of a reasonable doubt, that the court will assume to declare any act repugnant to the constitution. In short, all reasonable presumptions must be entertained, and all reasonable construction of the statute must be resorted to, in order to sustain the acts of a co-ordinate branch of the state government; remembering at the same time that the legislative power extends to all proper subjects of legislation, and are therefore unlimited, except as they are restricted by the constitution, and that the power of the legislature over municipal corporations is supreme and transcendent. It may erect, change, divide and even abolish them at pleasure, as it deems the public good to require, unless such action is expressly forbidden by the provisions of the constitution. (Dillon on Municipal Corporations, sec. 54; *Los Angeles Co. v. Orange Co.,* 97 Cal. 329, 32 Pac. 316.)

Petitioner refers to the fact that the counties of the state as they existed at the time of the adoption of the constitution were recognized in that instrument as legal subdivisions of the state. This is true, but it does not follow that the legislature cannot change those counties, create new ones or abolish old ones, if, in so doing, it does not violate any of the provisions of the constitution. In short, the above-quoted clause of the constitution contains no limitation whatever upon the power of the legislature to change the then existing counties. In the case of *People v. George,* 3 Idaho, 72, 26 Pac. 983, the contest was one of an entirely different character. There the suit was brought by and in the name of the people of the whole county; not by private party, to enforce a private right, but by the public, to enforce that which was alleged to be a public right, to wit, to compel the auditor of the old county to deliver the books, records and papers belonging to the people of Logan county to the persons alleged to be the constituted authorities of the new county. The respondent demurred, on the ground that the act creating Lincoln county was unconstitutional.

This suit being instituted by the public to enforce that which was deemed to be a public right, the unconstitutionality being alleged, that was the matter in issue, and properly so. The constitutionality of the act being presumed, it cannot be questioned in an application for writ of mandate by a private party to enforce a private right, particularly so where there is another and adequate remedy at law. The demurrer is sustained, and the writ denied.

Sullivan and Huston, JJ., concur.