## SAN DIEGO COUNTY v. RIVERSIDE COUNTY.

### L. A. No. 391; November 19, 1898.

#### 55 Pac. 7.

Counties—Presentation of Claims.—Statutes of 1893, page 346, sections 43, 44, requiring a second presentation of claims allowed in part to the board of supervisors before bringing suit for the balance, do not apply to claims wholly rejected.

Counties—Change of Boundaries and New Counties—Apportionment.—Act of March 11, 1893 (Stats. 1893, p. 158), erected a new county out of existing ones, and provided that commissioners should apportion the property and indebtedness of the old county and the new one. At that time certain railroad taxes were delinquent for each of eight years, and the railroad company paid the first six years' taxes, but left the taxes for 1886–87 unpaid. Under the reassessment act of March 23, 1893 (Stats. 1893, p. 290), the state board of equalization reassessed the latter taxes, and apportioned the valuation and taxes between the two counties according to the mileage in each. After the passage of the reassessment act, but before the reassessment, the commissioners apportioned the property of the old county, including taxes due, and fixed a ratio for the division of said taxes, excepting the taxes for 1886–87, and adjusted the indebtedness between the counties. The latter taxes were afterward paid into the treasuries of the old and new counties in the ratio established by the state board of equalization. Held, that, the commissioners having made no adjustment of the respective rights of the counties in them, an action by the old county to recover the amount of said taxes paid to the new county would not lie.

APPEAL from Superior Court, Los Angeles County.

Action by the county of San Diego against the county of Riverside. There was a judgment for plaintiff and defendant appeals. Reversed.

L. Gill, Charles R. Gray and E. W. Freeman for appellant; A. H. Sweet, Alexander Hughes and Goodrich & McCutchen for respondent.

CHIPMAN, C.—Action to recover certain taxes paid by the Southern Pacific Railroad Company upon reassessment by the state board of equalization for the years 1886 and 1887, under the provisions of the act of March 23, 1893 (Stats. 1893, p. 290), paid by that company to the state treasurer, and by him to defendant county. Defendant interposed a demurrer to the complaint, which was overruled; and, defendant declining to answer, plaintiff had judgment for $9,104.65, from which defendant appeals. The demurrer challenges the jurisdiction of the court as to both the person of defendant and the subject matter of the action, and the sufficiency of the facts alleged.

1. It is contended that the complaint is insufficient in showing that the claims sued upon were presented but once to the board of supervisors; citing sections 43 and 44 of the county government act (Stats. 1893, p. 346); Arbios v. San Bernardino Co., 110 Cal. 553, 42 Pac. 1080. In the case cited this court construed these sections to require a second presentation of a claim before suit where the board has allowed a portion of the claim presented and rejected the remainder; and the reason stated was that the board should have an opportunity to again consider the claim, if the amount allowed was not satisfactory to the claimant, so as to avoid, if the board should change its mind, the cost of litigation which might be imposed by section 44. Where the whole claim is rejected, as in the case here, the statute does not require a second presentation.

2. Riverside county was carved out of San Diego county and San Bernardino county by act of March 11, 1893 (Stats. 1893, p. 158). The railroad company at that time was a tax delinquent for the years 1880 to 1887, inclusive. It appears from the allegations of the complaint that the company paid the tax to these counties for the years 1880 to 1885 sometime during the year 1893; but for the years 1886 and 1887 the tax was levied upon the reassessment made under the act of

March 23, 1893, and was not paid until 1894. The action relates to the tax for these last two years. The act of March 11, 1893, creating Riverside county, contains a section, apportioning the public property and debts of the counties concerned, not unlike the one found in the act of March 11, 1889 (Stats. 1889, p. 123), creating Orange county. Section 9 of the act of March 11, 1893, supra, provides for the appointment of commissioners, and among their duties were the following: "Said board of commissioners shall, immediately after its organization, ascertain the indebtedness of San Diego county existing at the time this act takes effect, and also the total value of all property at that time belonging to said county of San Diego. They shall ascertain the assessed value of all property in San Diego county, as it stood before this act takes effect, according to the assessment made for San Diego county in the year eighteen hundred and ninety-two; also the assessed value, under the same assessment, of all property in the territory hereby set apart from San Diego county and embraced in the county of Riverside. They shall find the difference between the amount of the indebtedness of San Diego county and the value of the property belonging to San Diego county at the time this act takes effect, and, if such indebtedness exceeds the value of such property belonging to San Diego county, the county of Riverside shall pay San Diego county a due proportion thereof, to be determined as follows." Directions are given how to find this "due proportion," and the commissioners are directed to report the amount constituting this proportion to the boards of supervisors of the respective counties; "also, the value of any property belonging to San Diego county at the time this act takes effect which is situated in the county of Riverside. The sum of said ascertained value of said last-mentioned property, added to the ascertained proportion of said excess which the county of Riverside is to pay to San Diego county, shall be an indebtedness from the county of Riverside to the county of San Diego. Said property, situated as aforesaid in the county of Riverside, shall, upon settlement therefor as provided in this act, become the property of the county of Riverside, and San Diego county shall pay the entire indebtedness of San Diego county." Provision is further made for adjusting accounts after the excess in the value of the property over the indebtedness in either county is ascertained, and then fol-

lows a provision authorizing a tax by Riverside county should it, upon final settlement, be found indebted to San Diego county. The corresponding section found in the act organizing Orange county is set out quite fully in Los Angeles Co. v. Orange Co., 97 Cal. 329, 32 Pac. 316, and Orange Co. v. Los Angeles Co., 114 Cal. 390, 46 Pac. 173. It is alleged in the complaint that this board of commissioners was duly organized under the act, and to carry out its directions, and that "they proceeded to discharge their duties under said act"; that "they reported their proceedings to the boards of supervisors of San Diego county and Riverside county in October, 1893, ascertaining the sum of $2,782.86 to be due the county of San Diego by the county of Riverside on account of the matters which were considered by said commissioners." Among other things, it fixed a ratio of apportionment, "which ratio was subsequently ratified and accepted by the respective boards of supervisors of said counties, and adopted by them in the division of the taxes for the years 1880, 1881, 1882, 1883, 1884 and 1885, which had been reassessed against said railroad company, and paid over to the officers of the two counties, as hereinafter explained. But the taxes for the years 1886 and 1887 were not considered or in any manner adjusted by the said board of commissioners or the boards of supervisors of the two counties." The complaint then alleges that on August 24, 1894, while the taxes for these two years remained duly levied, but uncollected, the state board of equalization, "under and by virtue of the act of March 23, 1893, reassessed said railroad company for taxation" for these years, and improperly apportioned the amount to be paid to each county at the rate of $10,000 per mile—$877,000 to San Diego county and $926,000 to Riverside county—and reported the same to the auditors of the respective counties as the basis for taxation of the railroad company by them, and the property of the company was taxed in accordance with such apportionment. It is further alleged that the railroad company paid the tax to the state treasurer, and he paid the same to the respective counties as apportioned by the state board of equalization. The commissioners made the adjustment in October, some months after the reassessment act was passed, and presumably knew of its provisions, and that a reassessment for the years 1886–87 would be made.

These allegations of the complaint sufficiently show the nature and foundation of the action. No explanation is given as to why the commissioners did not adjust and apportion the taxes for the years 1886 and 1887. They did adjust the unpaid taxes for the years 1880 to 1885, inclusive, which had remained unpaid; and the commissioners evidently regarded (and properly, we think) the matter of adjusting these taxes as coming within the jurisdiction conferred upon the commissioners by the act under which they were constituted. These "back taxes" were treated as property formerly belonging to San Diego county; and if, for some unexplained reason, the railroad company paid the taxes to the counties for the years 1880–85, and refrained at that time from paying for the years 1886–87, until reassessed under the act of 1893 (if such be the fact), we cannot see that the question as to whether the matter properly belonged to the commissioners to adjust was affected thereby. The claim against the company for these taxes may have been in "abeyance" because "some question arose as to the validity of the provision of the act of the legislature for the collection of said taxes," as is alleged in the complaint; but it was a claim as much as was the claim for the back taxes of the other years, and was, we think, one of the matters confided to the commissioners for adjustment by the legislature. In Orange Co. v. Los Angeles Co., supra, the action was for a claim that had been omitted by the commissioners because they were ignorant of its existence, but was such a claim as the commissioners could have taken into account and apportioned. This court said: "In creating the county of Orange, the legislature determined how the debts and property of Los Angeles county should be divided and apportioned, as it had full power to do. The act prescribed the limits of each county's rights, and the methods by which they were to be ascertained. In performing their duties the commissioners doubtless intended to make the division as required, and, if they failed to do so, the failure arose through mistake. The mistake was one, however, which in our opinion can be corrected by legislative action only, and not by the courts." A similar claim to the one now before us was presented by the county of Colusa to the county of Glenn, arising upon the division of the latter county and under the reassessment act of 1893. In the act dividing these counties no provision was made for any apportionment of the

public property or of the debts or credits of Colusa county between it and Glenn county. It was held on demurrer in such case that the whole thereof belonged to Colusa county, citing Los Angeles Co. v. Orange Co., 97 Cal. 329, 32 Pac. 316; Tulare Co. v. Kings Co., 117 Cal. 195, 49 Pac. 8. But the point as to whether the tax paid in 1894 was upon the original assessment, or upon a reassessment, and what effect, if any, that question would have in the case, was not decided, but left open to be pleaded by defendant: Colusa Co. v. Glenn Co., 117 Cal. 434, 49 Pac. 457. In the present instance the legislature provided a board of commissioners to determine how these matters should be adjusted, and we think in such case the courts cannot be called upon to perform its duties: Sedgwick Co. v. Bunker, 16 Kan. 498; Orange Co. v. Los Angeles Co., supra.

From this view of the case, it becomes unnecessary to pass upon the questions, so fully discussed by the respondent, namely: When was the obligation to pay this tax incurred? Did San Diego county lose her right to this tax by the mere segregation of a portion of her territory? Did the act of March 11, 1893, deprive her of the right to receive this tax? These are questions not necessary to be decided in this case, and are therefore not now passed upon.

Respondent states in its brief that all the facts were set forth in the complaint in order to have the right of action determined on the demurrer, from which we infer that the complaint cannot be amended so as to obviate the objections made to it. The judgment should therefore be reversed, with directions to dismiss the action.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is reversed, with directions to dismiss the action.