**School Directors of District No. 89, County of Winnebago and State of Illinois et al., Appellants, v. Trustees of Schools of Township No. 26, North, Range No. 10, East of the Fourth Principal Meridian et al., Appellees.**[*]

### Gen. No. 7,392.

1. SCHOOLS AND EDUCATION—*construction of School Law as whole.* Inasmuch as the school system has been established and maintained under one constitutional provision, the School Law, although consisting of separate acts and of different articles and sections, must be considered and construed together.

2. SCHOOLS AND EDUCATION—*application of general School Law to community consolidated school districts.* The Community Consolidated School Act, Cahill's St. ch. 122, ¶¶ 85-91(2), while providing an additional method for the consolidation of school districts, and,

---

[*] This case was originally ordered to be abstracted and was reported as such in 238 Ill. App. 642. The Court thereafter directed its publication in full, and it is here reported pursuant to that direction.

School Directors et al. v. Trustees of Schools et al., 240 Ill. App. 619.

consequently, a new method for changing the boundaries of such districts after their formation, does not contemplate the formation of districts with characteristics different from those of other common school districts, and such consolidated districts are subject to all applicable provisions of the General School Law.

3. SCHOOLS AND EDUCATION—*provision for distribution of property of dissolving community consolidated district as excluding application of provisions for apportionment between district and new districts formed therefrom.* The fact that section 84i of the Community Consolidated School Act, Cahill's St. ch. 122, ¶ 91(2), provides for the distribution of the property of a district formed thereunder, in the event of its dissolution, does not render inapplicable the provisions of the General School Law, Cahill's St. ¶¶ 64 and 65, regarding the apportionment of the property of a school district between such district and a new district created out of a part thereof.

4. SCHOOLS AND EDUCATION—*apportionment of property of school district between it and district formed therefrom.* In the absence of legislation or an agreement to the contrary, property of a school district, which by reason of an alteration of its boundaries falls within the boundaries or within the jurisdiction of another school district or a city having a board of education in which school property is vested, becomes the property of the district or city to which it is annexed, and such rule is applicable to a community consolidated district.

5. MANDAMUS—*sufficiency of petition to compel trustees of community consolidated district to apportion property to new districts formed therefrom.* Where a petition for mandamus directed to the trustees of a community consolidated school district alleged the due formation and organization of the petitioning districts out of parts of such consolidated district, and the refusal of the defendant trustees to proceed under sections 64 and 65 of the School Law, Cahill's St. ch. 122, ¶¶ 64, 65, for an apportionment of the property of such consolidated district between it and the districts so formed, it was error to sustain a demurrer to such petition.

Appeal by plaintiffs from the Circuit Court of Winnebago county; the Hon. E. D. Reynolds, Judge, presiding. Heard in this court at the October term, 1924. Reversed and remanded. Opinion filed July 14, 1925.

HYER, GILL & RANG, for appellants.

WELSH & WELSH and GARRETT, MAYNARD & HULL, for appellees.

MR. JUSTICE JETT delivered the opinion of the court.

This is a mandamus proceeding instituted by School Directors of District No. 89, County of Winnebago and State of Illinois; School Directors of District No. 95, County of Winnebago and State of Illinois; School Directors of District No. 98, County of Winnebago and State of Illinois; School Directors of District No. 101, County of Winnebago and State of Illinois, appellants, against Trustees of Schools of Township No. 26, North, Range No. 10, East of the Fourth Principal Meridian; Trustees of Schools of Township No. 26, North, Range No. 11, East of the Fourth Principal Meridian; Board of Education of Community Consolidated School District No. 124, County of Winnebago and State of Illinois; C. P. Coolidge, President of the Board of Education of Community Consolidated School District No. 124, County of Winnebago and State of Illinois; M. B. Livingston, William Liggett, L. J. Haley, Harry Barrack, Elmer Mellon and Marion Watson, members of Board of Education of Community Consolidated School District No. 124, County of Winnebago and State of Illinois, appellees, to compel appellees, trustees of schools, to set off to their credit certain moneys and real and personal property claimed to be due to the appellants, on the detachment of their districts from a community consolidated school district. It appears that on April 24, 1920, appellant districts, together with three other common school districts, formed Community Consolidated School District Number 124. At the time of the consolidation appellant district Number 89 had $747.48; No. 95 had $1,209.51; No. 98 had $365.53, and No. 101 had $1,062.26, totaling $3,384.78 in money to their credit, and each was possessed of a school building and site, and equipment for the same. On the organization of the new district No. 124, it took possession and control of this real estate and personal property, and had the money placed to its credit on

the books of the township treasurer, and proceeded to levy and collect taxes on all of the lands and property in the newly consolidated district.

In conformity with the provisions of the Community Consolidated Act [Cahill's St. ch. 122, ¶ 85 *et seq.*], as amended in 1923, appellants each filed a petition on July 12, 1923, with the county superintendent of schools of Winnebago county, requesting that a vote be taken to detach its territory from the consolidated school district. Complying with the prayer of the petitions, presented by said appellants, the county superintendent of schools of the said county of Winnebago called an election, which was held on August 4, 1923, and the proposition to detach carried by the requisite number of affirmative votes in each district. The four districts were detached and thereafter proceeded to elect directors and organize under and with the direction and assistance of the county superintendent of schools as provided by statute. It appears that at the time of detachment, the consolidated school district had accumulated from tax receipts, together with the above initial transfer of funds, the following amount of money:

| | |
|---|---:|
| In the educational fund | $22,940.56 |
| In the building fund | 22,273.03 |
| In the distributable fund | 4,527.32 |
| Total | $49,740.91 |

and had no bonded indebtedness or contract obligations of any nature, except for small current expenses.

Appellants each filed a written request with appellees, trustees of schools of the two townships, in which the said consolidated district was situated, asking that they meet and distribute the money on hand, so that each of the detached districts would receive its proportionate share, and further asking them to appoint appraisers to value the real and personal

property, and to charge or credit the same, as the case might be, to each of the districts.

The trustees refused to meet as requested, and refused to comply with the request of appellants to meet and distribute the money on hand, and to appoint appraisers to value the real and personal property, and to charge or credit as the case might be, to the respective districts, such sum or sums as might be found to be due to them or from them; whereupon the appellants filed their petition for mandamus, alleging the facts as above indicated in detail, and that they had no funds or equipment, or means of obtaining the same, and that their credit was impaired, and that they could not adequately carry on their schools and prayed the court that the writ issue to compel the appellees, trustees to conform to their request.

The board of education of the consolidated district and the president and members thereof, being interested in the subject matter of the litigation, were made parties defendants. The board of education of the consolidated district, and the members thereof, filed a general demurrer to the petition, which the trial court sustained, and judgment was entered dismissing the petition and for costs, from which judgment an appeal was perfected to this court.

The judgment of the trial court in sustaining the demurrer and dismissing the petition is assigned as error. As we view it, the main question raised on this appeal is: Upon the detachment of the petitioner districts from the community consolidated school district, do sections 64 and 65 of the School Law [Cahill's St. ch. 122, ¶¶ 64, 65] apply and require the trustees of schools to make a distribution of assets? The four appellant school districts base their claim to the relief prayed for in their petition for mandamus upon the provisions of sections 64 and 65 of the School Act of 1909. Sections 64 and 65 are as follows:

"§ 64. *Distribution of funds to new districts.*] When a new district has been formed by the trustees, or by the county superintendent or county superintendents, from a part of a district or parts of two or more districts, the trustees of the township or townships concerned shall make forthwith a distribution of tax funds, or other funds in the hands of the treasurer, or to which the district may at the time of such division be entitled, so that the old and new districts shall receive parts of such funds in proportion to the amount of taxes collected next preceding such division from the taxable property in the territory composing the several districts. If the new districts be composed of parts of two or more districts, the trustees shall make distribution of such funds between the new district and the old districts respectively, so that the new district shall receive a distribution of the funds of each of the old districts in the proportion which the amount of taxes collected from the property in the territory of the new district bears to the whole taxes collected next before the division in the old district; and the township treasurer shall forthwith place the sum so distributed to the credit of the respective districts, and shall immediately place the proportion of the funds to which the new district may be entitled to its credit on his books, and the funds on hand shall be subject at once to the order of the directors of the new district, and those not on hand, as soon as collected.

"§ 65. *Appraisers—Property and debts.*] When a new district is created or within thirty days thereafter, the trustees of the township or townships concerned shall appoint three appraisers, who shall not be residents of the township or townships interested. It shall be the duty of such appraisers, within thirty days after their appointment, to appraise the school property, real and personal, of the district or districts interested, at their fair cash value. Within thirty days

after such appraisement, the trustees of the township or townships concerned shall charge the property to the district in which it may be found, and credit the other districts interested with its proportion of such valuation: *Provided, however,* that the *bona fide* debts of the old district shall first be deducted and the balance charged and credited as aforesaid; and the trustees shall direct the treasurer to place to the credit of the district not retaining such property, its proportion of the value thereof, and of the funds then on hand, or subsequently to accrue, belonging to the district to which such property is charged.''

We understand the position of appellees to be, first, that the Community Consolidated School Act of 1919, as amended in 1923, creates an entirely new form of school district, not bound by the provisions of the General School Law, except where expressly stated; second, that the terms of the Consolidated School Act show an intent on the part of the legislature to take from detached territory the right to participate in the distributive share of the wealth of the consolidated district, unless such detachment be a part of a complete discontinuance of the consolidated district, and the reorganization of the former common school districts, of which it is composed under the provisions of section 84i of the Act of 1919 [Cahill's St. ch. 122, ¶ 91(2)], as amended in 1923. This last position assumed by appellees is based entirely upon the act of 1919, as amended in 1923, by which it is provided that in the event of the discontinuance of a community consolidated district, and reorganization of the former school districts of which it is composed, then the former common school districts will participate in the wealth of the consolidated district, and that there may be a distribution of the money on hand, and of the real and personal property.

The changing of boundaries of common school districts, either by detachment or annexation of territory,

or by combining districts, have long formed a part of our school laws. Community consolidated school districts, created under the Act of 1919, or the Act of 1923, as amended, are and do constitute school districts forming a part of our system of free schools; that this is true is especially stated in section 84f of the Act of 1923 [Cahill's St. ch. 122, ¶ 90]. Although the School Law consists of separate acts and of different articles and sections, yet, inasmuch as the school system has been established and maintained under one constitutional provision, these laws must be considered and construed together. As heretofore applied to the common district schools, as it has existed throughout the State, it has been the rule, as well as the policy upon detachment of territory from such a school district, to permit the detached territory to share in the school property which remained unexpended at the time of the separation. Since the community consolidated school district, created under the Act of 1919 or the Act of 1923, constitutes school districts, forming a part of our system of free schools, it is the contention of appellants that, for the purposes of this proceeding, it occupies the same position as the ordinary common school district, in relation to sections 64 and 65 of the School Law [Cahill's St. ch. 122, ¶¶ 64, 65]. The community consolidated School Act does not provide for any new form of school district that would take it out of the provisions of sections 64 and 65 of the School Law. In discussing the act under which a community consolidated school was organized in *People v. Exton,* 298 Ill. 119, at page 121, the court said: "While the act is called an act to amend the general School Law, it does not change, reform, revise, correct or modify any provision of the general School Law or purport by its language to do so. The act gave to a district to be organized under the added sections the same powers and duties as other school districts under the School Law, which remained the

same, and some added powers were given to the districts so organized. If the act should be regarded as adopting other portions of the School Law, that is the method of legislation free from constitutional objections; * * * but this act was not even of that character, since it simply added to the School Law the sections and specifically gave to the districts organized under it the rights and powers of the whole act, etc." A similar statement is also found in *People v. Shultz,* 298 Ill. 125. In the *Shultz* case it was urged that section 46 of the general act provided for consolidation, and that because the Act of 1919 also provided for consolidation, it must be supposed that a legislature intended a repeal of section 46. In discussing this question the court at page 127 said: "We are unable to see the force of this argument. It was evident that the legislature, in enacting sections 84a to 84g of the School Law, intended to add other means than those existing by which consolidation of school districts may be had, and the fact that it made provision for the consolidation of such districts as lie in different counties, which was not provided for in section 46, does not establish that the legislature intended to repeal section 46 or that the application of the act is limited to such districts. * * * The Act of June 24, 1919, granted additional means for the consolidation of school districts."

In *People v. Moyer,* 298 Ill. 143, 145, the court defines the status of the Act of 1919 as follows: "The act does not purport to be an independent act but an amendment of a previous statute." In view of the rule announced, the Act of 1919, together with the amendment thereto in 1923, added but one thing to our existing School Law, namely: Another method of effecting consolidation, and its corollary, a new method of changing the boundaries of the district after it was formed. In all other respects, legal characteristics of a community consolidated district are the

same as those of any other common school district. The standards for its teachers and textbooks are the same; the discipline of the pupils and the course of the studies are the same; it levies and receives tax money in the same manner; it pays its bills in identically the same way, and has its identity with other school districts, single or consolidated, under the School Laws of 1857, 1865, 1909 and 1917. The form of the method of consolidation itself is new, but not the substance of the district thereby created.

The conclusion reached from the opinions of the court in the case last above cited is that not having created anything new, nor having changed or modified the provisions of the General School Law, such provisions may be applied to community consolidated districts, as well as ordinary districts, where the facts are such as to warrant their application. Sections 64 and 65 of the General School Law would therefore be applicable to the situation found in the case at bar, unless there be a contrary intent to exclude these two sections shown in the wording of the Act of 1919. Section 84i of the Act of 1919 [Cahill's St. ch. 122, ¶ 91(2)] makes provision for the discontinuance of a community consolidated district and its reorganization into the former districts of which it was composed, and makes the further provision that on such dissolution of the consolidated district and the reorganization of its component parts, all outstanding obligations shall be discharged and a distribution of the remaining assets to the former underlying districts in proportion to the assessed valuation of their respective taxable properties.

It is the contention of appellees that because the Act of 1919 specifically makes provision for distribution in the event of dissolution, that it impliedly excludes the right to distribution in all other cases where a new district is created out of a part of the consolidated district. To so hold would be an acknowledg-

ment of the repeal of said sections 64 and 65 by implication, and repeals by implication are not favored. The contention of appellees in this respect is greatly weakened when we consider the language used in *People v. Moyer, supra,* wherein it is held that the status of the Act of 1919 is defined: "The act does not purport to be an independent act but an amendment of a previous statute."

In view of the rule that the School Law must be considered and construed as one entire act, we can see what the legislature evidently had in mind when section 84i of the Act of 1919 was adopted. It was recognized that in the event of the dissolution of a community consolidated school district that there was a discrepancy in the law, and since the School Law provided a means of adjusting the property interests of districts that were formed from a part of a district or parts of two or more districts as evidenced by sections 64 and 65, they would provide a means for taking care of the respective districts in the event of a dissolution of a community consolidated school district.

It will be remembered that at the time of the enactment of the provisions of sections 64 and 65, and up to the time of the adoption of the Act of 1919, our School Law had never provided for the dissolution of a consolidated district into its component parts. This form of dis-incorporating a consolidated district and the incorporation of its integral parts, was first brought into being by the Act of 1919, and sections 64 and 65 had no clearly defined provision under their terms for distribution in the event of such dissolution as the Act of 1919 authorized. Therefore the legislature must have considered and recognized that a discrepancy existed in the law and made provision for it in the sections which create the new situation. It is urged by appellee that section 64 [Cahill's St. ch. 122, ¶ 64] requires as a condition precedent that the new district must be formed by the trustees or by the

superintendent of schools, and it is insisted that the appellants' districts were not so formed. It will be remembered that section 84g of the Act [Cahill's St. ch. 122, ¶ 91] under consideration provided, "if three-fourths of the legal voters of such district shall vote in favor of detachment then the county superintendent of schools shall thereupon detach said territory and organize the same into a common school district." In the case of the *People v. Lukenbill*, 314 Ill. 64, at page 69 the court in discussing the Act of 1919, said: "By the act of 1919 community consolidated school districts were organized under the direction of the county superintendent of schools. Amended section 84g provides that all petitions for the detachment of territory from such a district shall be presented to the county superintendent 'under whose direction the district was established.' This language applies to districts already organized as well as to districts to be created in the future. The amended section gives the county superintendent exclusive power, in his discretion, in specified cases, 'to change the boundaries of community consolidated school districts.' "

Appellants contend that on the detachment of territory from a school district control of the school property, in the absence of legislation making a division of the property, lies in the territory in which it happened to fall because of such detachment; that under the facts in this case the rule of the common law obtains, and that rule leaves the property where it is found. The legislature evidently recognized such rule at the time of the adoption of said section 65 [Cahill's St. ch. 122, ¶ 65]. If the rule was not so recognized, what reason could the legislature have had for providing in section 65 for an appraisement of the property and a charge against the district wherein found, and a proportional credit in favor of that district in which it no longer lies? It appears that section 65 was enacted with a view of supplying

a manner of procedure which the common law failed
to provide. The rule as above contended for, by ap-
pellants, has, in our opinion, been recognized by the
courts of this State. The annexation of territory to
a municipality does not carry with it the necessity
of formulating a code of municipal laws for the ter-
ritory annexed. By becoming a part of the munic-
ipality it is *ipso facto* brought under and made sub-
ject to all the laws by which the municipality itself
is governed. *McGurn v. Board of Education of City
of Chicago,* 133 Ill. 122.

In the case of *Cravener v. Board of Education of
City of Chicago,* 133 Ill. 145, the court said, "by virtue
of the annexation of the town of Lake to the city of
Chicago, the board of education of the city of Chicago
became vested with exclusive jurisdiction over the
public schools within the town of Lake." The rule
is also recognized in *Mobile & Ohio R. Co. v. Fraser,*
169 Ill. App. 210-217. Where a new school district
is created including within its boundaries a school-
house or other real estate belonging to a previously
existing district such real estate becomes the prop-
erty of the new school district. *Pass School Dist. of
Los Angeles Co. v. Hollywood City School Dist. of Los
Angeles Co.,* 156 Cal. 416; vol. 20, Am. & Eng. Ann.
Cas. 87. This case announces the rule to be that the
old corporation will hold all of the corporate property
within her new limits and the new corporation will
hold all the property falling within her boundaries.

In *Pass School Dist. of Los Angeles Co. v. Holly-
wood City School Dist. of Los Angeles Co., supra,* it
appears that Pass School District for many years had
been a school district in Los Angeles county. In 1889
the real property in controversy was deeded to the
trustees of the Pass School District, to be used as a
schoolhouse lot and ground. For such purposes the
Pass School District held and used the property until
November, 1903, when the city of Hollywood was in-

corporated, with which incorporation came into existence. the Hollywood City School District. The school property in question was included on the incorporation of the city of Hollywood and the organization of the Hollywood City School District, within the corporate limits of the latter. The remaining portion of the Pass School District, not within the corporate limits of the city of Hollywood, continued as a school district under the name of the Pass School District. In a decision of this case the court among other things said: "The question presented may be thus stated: what, under the indicated circumstances, is the disposition made by the law of the real property of such corporation owned and used for the corporate purposes when, by a change in the boundaries, that property falls within the territorial limits of the new corporation organized for identical purposes? Or, wording it differently, did the title, dominion, power and control over the land in controversy pass to the Hollywood City School District, or did they remain where formerly they had been, with the Pass School District? So far as this state is concerned, this question would seem to have been conclusively answered in favor of respondent by such cases as *Los Angeles County v. Orange County,* 97 Cal. 329, and *Vernon School Dist. v. Board of Education,* 125 Cal. 593. The last case is directly in point. It was an action brought to quiet title by the Vernon School District to lands used for public school purposes originally within the territorial limits of the district, but subsequently, by annexation, falling within the corporate limits of the city of Los Angeles. It is there said that, 'in the absence of statutory provisions governing the ownership of municipal property, upon the division of a municipality, municipal property consisting of real estate belongs to the municipality within which it is located by the division.' * * *

School Directors et al. v. Trustees of Schools et al., 240 Ill. App. 619.

"The legislative power being full and complete over the matter as a part of that power, it may make provision for the division of the property and the apportionment of the debts of the old corporation, when a portion of its territory and public property are transferred to the jurisdiction of another corporation. But, in the absence of such provision, the rule of the common law obtains, and that rule leaves the property where it is found, etc." The opinion in the Pass District case is a well considered one, and is, in our opinion, supported by the weight of authority. The *Pass District* case finds support in *People v. Bartlett*, 304 Ill. 283-287.

In passing it is proper to here state that the *Bartlett* case does not support the contention of appellees, although they cite it and quote quite freely from the opinion in their argument. According to our view of the *Bartlett* case, the court, when it said: "So if a part of its territory and some of its inhabitants are separated from it by annexation to another or by the erection of a new corporation, the former corporation retains all its property, powers, rights and privileges," was speaking only of the property remaining in the old district. We have examined the authorities relied upon by appellees, and the rules announced therein, and notwithstanding what has been said in support of the decisions, relied upon by them, we are convinced that their contention is not supported by the weight of authority. To discuss the decisions relied upon by appellees would unduly extend this opinion. From an examination of the books we have concluded that in the absence of legislation or an agreement to the contrary, property of a school district, which by reason of the alteration of its boundaries, falls within the boundaries, or within the jurisdiction of another school district, or a city having a board of education in which school property is vested, becomes the property of the district or city to which it is annexed. We

have further concluded that a consolidated school district is no different in substance than a common school district and subject therefore to all general enactments of the School Law. If the consolidated district had incurred bonded obligations such obligations would have followed the detached territory in whatever form it might later be incorporated, and this under the express provisions of the General School Law. If detached territory can and should not escape its obligations created before the detachment, the detached territory should be allowed to share in the fund and property created before detachment. We, therefore, are of the opinion that the circuit court of Winnebago county erred in sustaining the demurrer to the petition and the judgment of said court will be reversed and the cause remanded.

*Reversed and remanded.*