[Sac. No. 221. Department One.—May 28, 1897.]

## COUNTY OF TULARE, APPELLANT, v. COUNTY OF KINGS, RESPONDENT.

COUNTY—LIABILITY OF NEW COUNTY FOR DEBTS OF OLD.—Under section 3 of article XI of the constitution, providing that new counties shall be liable for "a just proportion of the existing debts and liabilities of the county or counties" from which its territory is taken, the courts have no power to determine what is such "just proportion." The power to apportion such debts rests exclusively with the legislature, and, in the absence of any legislation on the subject, the old county cannot maintain an action against the new to recover any part of its existing indebtedness.

ID.—CONTRIBUTION—SURETY—REMEDY.—Neither section 1432 of the Civil Code, providing for contribution between joint debtors, nor section 2847, relating to the obligation of a principal where the surety satisfies the obligation, nor section 3523, declaring that for every wrong there is a remedy, authorizes the maintenance of such an action.

APPEAL from a judgment of the Superior Court of Fresno County. STANTON L. CARTER, Judge.

The facts are stated in the opinion.

*Power & Alford*, and *Lamberson & Middlecoff*, for Appellant.

*M. L. Short*, for Respondent.

CHIPMAN, C.—This is an action brought by plaintiff against defendant to enforce a claim for a portion of the bonded debt of plaintiff. The complaint alleges: That by act of the legislature (Stats. 1875-76, p. 26) plaintiff was authorized to issue and did issue $75,000 of bonds to build a courthouse, and by another act (Stats. 1877-78, p. 198) was authorized to issue and did issue road bonds to the amount of $31,000; that by act of the legislature (Stats. 1893, p. 176) the county of Kings (defendant) was created wholly out of Tulare county (plaintiff), and was fully established May 29, 1893; that on this last date there were outstanding $22,000 of said courthouse and $5,000 of said road bonds; that between May 29, 1893, and September 18,

1895, plaintiff paid on account of said bonds $14,472.46; that taking the assessment rolls of the two counties as a basis of computation, the amount or proportion due from defendant was $4,615.22, which, with interest added, would make $5,049.61 due on October 11, 1895; that on the last-named day plaintiff presented its claim to the board of supervisors of Kings county (defendant) for said sum, which was rejected on November 7, 1895, and on November 23, 1895, plaintiff commenced this action to recover said sum. Defendant demurred. on the ground that the complaint did not state facts sufficient to constitute a cause of action, which demurrer the court sustained, and, plaintiff declining to amend, gave judgment for defendant for costs, and plaintiff appeals from this judgment.

Plaintiff presents several points· on which it relies which will be noticed in the order presented. 1. The defendant is liable under the constitution, and this liability is absolute.

The act creating Kings county (Stats. 1893, p. 176) made no provision concerning the debts of Tulare county existing at the time of division. It is claimed, however, that by section 3, article XI, of our state constitution, the law of the state was established fixing the amount which a new county should pay of the indebtedness of the old county, and that this provision of the constitution is self-executing. The section reads as follows: " Every county which shall be enlarged or created from territory taken from another county or counties shall be liable for a just proportion of the existing debts and liabilities of the county or counties from which such territory shall be taken."

The contention of plaintiff is that by the supreme law of the state it has been declared that the new county shall pay a *just proportion* of the debts of the old county, and it is left with the courts to determine what that *just proportion* may be in a case presented. In other words, it is denied that the legislature has any power to apportion the indebtedness, but that the question as to how

much this just proportion will amount to is purely judicial.

On the other hand, defendant contends that the sole question is whether the action will lie against defendant, the legislature having failed to provide in the act creating Kings county for the apportionment of the public property and debts of the county of Tulare.

If it be true, as plaintiff contends, that the constitution has exhausted the legislative function in declaring that the new county shall pay its just proportion of the debts of the old county, and that it remains only for the courts to ascertain this proportion, I can see how the complaint might state a cause of action. But is this true? The provision, in my opinion, is nothing more than a restriction upon the legislative power to compel it to provide for the payment of a just proportion of the debt of the old by the new county whenever, in its judgment, such payment should be made, We had no such provision in the old constitution, but the legislature frequently exercised the power, and it was upheld. (*Los Angeles County* v. *Orange County*, 97 Cal. 329, and cases cited.)

The power to subdivide counties or to create new counties resides in the legislature, and nowhere else. The exercise of this power in the case before us is not questioned. In adopting the new constitution the people undertook to place certain limitations upon this power. Section 3 of article XI provides that: "No new county shall be established which shall reduce any county to a population of less than eight thousand; nor shall a new county be formed containing a less population than five thousand; nor shall any line thereof pass within five miles of the county seat of any county proposed to be divided. Every county which shall be enlarged or created from territory taken from any other county or counties shall be liable for a just proportion of the existing debts and liabilities of the county or counties from which such territory shall be taken."

There is here no enlargement or grant of power; that

was not necessary. The purpose of the provision, on the contrary, was intended, I think, as restrictive of, and a limitation upon, the power. But the power still remained with the legislature. No part of it was intended to be devolved upon the judicial department. The question of adjusting the debts of the old county was one involved in the very act of creating the new. The whole subject of the wisdom and expediency of creating the new county is a matter addressed to the legislature—the question of what, if any, proportion of the debts of the old should be paid by the new county, with all other questions concerning division, is with the legislature.

If the legislature deemed it just that some proportion of the debt of the old should be paid by the new county, and could not itself fix that proportion, it could provide the machinery by which this proportion could be ascertained by the courts or by commissioners, and the basis upon which to make the computation. The complaint shows that certain sums were paid out by plaintiff in three different years, and for each year the proportion of defendant's liability is fixed by taking the assessed valuation of the property of each county for that year, and charging defendant a proportion of the whole amount paid on the debt in the ratio the assessment in the new county bears to that of the old. So far as any authority for taking this basis for settlement is concerned, it is arbitrary, and without any constitutional or legislative warrant.

A large part of the debt was incurred for building a courthouse, which remained in Tulare county. The legislature may have thought it inequitable to place any portion of this burden on the new county, as. it would have to build one for its own uses. Possibly the road bonds were for expenditures on roads wholly within the remaining territory of Tulare county.

These considerations, with all others bearing upon the question of county division, it must be presumed were brought to the attention of the legislature.

In the case of *Bristol* v. *New Chester*, 3 N. H. 524, speaking of the power to divide towns, it was said that the power is strictly legislative, and that the power to prescribe the rule by which the property of the old town shall be divided is incident to the power to divide the territory, and is, in its nature, purely legislative.

In the case of *Laramie County* v. *Albany County*, 92 U. S. 307, the principle stated in the case last cited is approved, and it is further held "that if the legislature omit to make any provision as to the property and the debts of the old county, the presumption must be that they did not consider that any legislation in the particular case was necessary. Where the legislature does not prescribe any such regulations, the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the act of separation was passed. Old debts she must pay without any claim for contribution." (Citing numerous cases. See, also, Dillon on Municipal Corporations, sec. 188.)

Again, the constitution does not state to whom the liability for a just proportion of the debts of the old county shall be payable; it does not state when the liability shall begin or end, so as to guide the courts in determining what liabilities are to be deemed existing; it does not declare any rule by which to establish a basis of apportionment, whether upon an assessment for the year preceding the division, or the year of the division, or some subsequent assessment to be made for that special purpose; it provides no machinery by which any such basis could be ascertained by the courts; it leaves the consideration of the value of the public property remaining in the old county entirely out of view, and this consideration alone might fully justify the imposition of the entire debt of the old county on that county alone.

It would seem to me, if the courts should undertake to determine this question upon the authority of the constitution alone, they would have neither compass

nor rudder by which to be guided. Since the new constitution went into effect, there have been five new counties created, viz., Glenn, Madera, Riverside, Orange, and Kings. In the acts creating three of these counties, to wit, Glenn, Madera, and Kings, no provision was made for payment of any part of the debts of the old counties; in the other two, provision was made. Here is a legislative construction given to the constitution which, while not binding upon this court, contributes to the correctness of the position taken in this opinion.

But I think the very question has been settled by this court in *Los Angeles County* v. *Orange County, supra.* Plaintiff seeks to avoid the result of that case by declaring it to be *dictum* in so far as it construes section 3, article XI, of the constitution. In this position, counsel are, I think, wholly mistaken.

The point was not so directly raised there as it is here, and yet its decision seems to me to have been naturally, if not necessarily, involved. The act under which Orange county was carved out of Los Angeles, provided that the debts of the old county, existing on the day the act took effect, should be ascertained by commissioners and paid proportionately to the assessed value of the property of the respective counties of a certain year. Los Angeles county claimed certain sums for expenditures after that date, March 11, 1889, and up to the date of the organization of the new county, August 2, 1889. Payment was refused when the claim was presented to the board of supervisors, and the action followed. The trial court sustained a demurrer to the complaint, and the judgment was affirmed here. The learned justice, in delivering the opinion of the court, called attention to the established rule that where no provision is made by the legislature as to the debts of the old county they remain with the old county. He then takes up the constitutional provision in question, and says: "The mode of determining the 'just proportion' of the debts and liabilities for which the new

county shall be liable, is not prescribed in the constitution, *but is left to the determination of the legislature in each particular case";* he points out that the legislature did provide a mode of ascertaining the "just proportion" of the debts by the appointment of commissioners, and limited the liabilities to those existing at the time the act took effect, and he says: "As the legislature could divide the public property and assets of the county in such mode as it might choose, it was competent for it to fix upon a date, which it might select, as the time for ascertaining their amount and value, *as well as determining in connection therewith the 'just proportion' of the debts and liabilities to be assumed by the new county. In the present instance the legislature fixed the time when the act took effect as the proper period for ascertaining the amount of these assets and liabilities, and it cannot be held that the constitutional provision was violated in selecting that as the point of time at which to properly determine what would be a 'just proportion' of the debts and liabilities to be assumed by the new county."* The expenditures for which the claim was made were incurred in the new county prior to its organization, but after the date of the act, and the commissioners had reported these separately, with the remark, "that as a matter of equity the amount should be refunded by Orange county to Los Angeles county." The opinion upon this point continues: "The legislature may have considered that it would be necessary for the county of Los Angeles to expend money for municipal purposes within this territory; *and as it was within its discretion to determine that it should bear the burden of any of the expenditures which it might thus make, the fact that it has made no provision for its reimbursement is indicative that it was not its intention that it should be reimbursed therefor."*

Now, this was just such a claim as counsel for plaintiff insists must be heard and determined by the judicial arm of government, and that over it the legislature has no jurisdiction or power whatever. It seems to me the decision necessarily settles the very question here

—that it is a legislative and not a judicial function. Upon plaintiff's theory it was the duty of the court to overrule the demurrer and proceed to hear and determine what the "just proportion" of the debt of Los Angeles county was that should be borne by Orange county; but the court found no cause of action stated, because the legislature had disposed of it, and because it was a legislative function and not a judicial one. (See, also, *County of Orange* v. *Los Angeles County*, 114 Cal. 390.)

2. Plaintiff claims that the indebtedness was a joint obligation to the extent that both counties were liable to the bondholders for that portion of the bonds justly chargeable to the territory comprising Kings county, although plaintiff admits that Tulare county is not relieved, and the bonds may be enforced against Tulare county (citing *Hughes* v. *Ewing*, 93 Cal. 414; *Bates* v. *Gregory*, 89 Cal. 387); and it is claimed that Tulare county is entitled to contribution from Kings county. (Citing Civ. Code, sec. 1432, which provides that "a party to a joint or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him.")

This section presupposes some contractual relations between the parties, but no relations existed here except such as were created by the act authorizing the division of the counties. None were created by which a duty was imposed upon Kings county to pay directly or to contribute to the existing indebtedness.

3. Plaintiff also claims a right of action under section 2847 of the Civil Code, relating to the obligation of a principal where the surety satisfies the obligation. I can see no application of the principle of that section to this case. Tulare county was not surety for Kings county in any legal sense.

4. Plaintiff further claims that the court has power to grant the relief under section 3523 of the Civil Code, and section 187 of the Code of Civil Procedure. The

Civil Code section declares that for every wrong there is a remedy. This may not be questioned. The remedy in this case is with the legislature, as we have found, and not with the courts.

The section of the Code of Civil Procedure cited provides that when jurisdiction by the constitution, or this code, or by any other statute, is conferred on a court, all the means necessary to carry it into effect are also given, and if, in the exercise of its jurisdiction, the course of proceeding be not pointed out specifically, any suitable process or mode of proceeding may be adopted by the court which may seem most conformable to the code.

To make this section available, we must assume that the statute law or the constitution confers jurisdiction in such a case as this upon the courts. But we have found no such jurisdiction to exist, and hence the section does not apply, and it becomes unnecessary to notice the very numerous cases cited by plaintiff which its counsel have collected.

Those nearest in point are cases where the legislature did, in fact, provide a mode of ascertaining the several liability of the two counties, and the courts were appealed to in aid of the remedy. Numerous citations of state constitutions with similar provisions to ours in the matter of county division are given, but counsel admit their failure to find any case reported where the facts were like those here.

I find no error in the conclusion reached by the trial court, and it is recommended that the judgment be affirmed.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

HARRISON, J., VAN FLEET, J., GAROUTTE, J.