[L. A. Nos. 515, 516, 517.   In Bank. — November 19, 1901.]

COUNTY OF RIVERSIDE, Respondent and Appellant, v. COUNTY OF SAN BERNARDINO, G. T. STAMM, et al., Appellants and Respondents.

DIVISION OF COUNTY — BOARD OF COMMISSIONERS — CHANGE OF SETTLE-
MENT — MANDAMUS — CONTROL OF DISCRETION. — *Mandamus* never
lies to compel a tribunal to perform in a particular way an act which
involves the exercise of discretion and judgment, and will not lie to
compel a board of commissioners, appointed to adjust accounts upon
the division of a county, which has performed its functions, to re-
settle and readjust its accounts between the old and the new county
in a particular way.

ID. — BOARD FUNCTUS OFFICIO — EXHAUSTION OF POWER. — The board
of commissioners, having performed the functions for which it was
created, is *functus officio;* and its power, being limited to one express
object, was exhausted by its exercise.

ID. — POLITICAL ACTION OF LEGISLATURE AND BOARD — JURISDICTION OF
COURTS. — The whole matter of the division of a county, and the
creation of a new county, and the determination of what, if any,
liability there shall be between a new county and the old one from
which it is carved, is in its nature political, and not judicial, and
belongs wholly to the legislative department of the government.
No court exercising either law or equity powers has jurisdiction to
control any political action of the legislature or of a board of com-
missioners established by it as its political agent or instrumentality.
A court can only enforce a liability or legal rights expressly estab-
lished by the legislature.

ID. — JURISDICTION OF EQUITY — FRAUD OR MISTAKE — JURISDICTION OF
SUBJECT-MATTER. — A court of equity has jurisdiction in cases of
fraud or mistake, provided it has jurisdiction of the subject-matter
in connection with which the fraud or mistake occurred; but it has
no jurisdiction of the subject-matter of fraud or mistake connected
with legislative or political action, which is beyond judicial control.

CROSS–APPEALS from a judgment of the Superior Court of
Los Angeles County and an appeal from an order denying a
new trial.   J. W. McKinley, Judge.

The facts are stated in the opinion of the court.

R. E. Houghton, and J. S. Chapman, for Plaintiff, Respond-
ent and Appellant.

Rodgers & Paterson, and Curtis & Curtis, for Defendants,
Appellants and Respondents.

McFARLAND, J.— These appeals are all taken in the same case.

The first (No. 515) is from an order denying the defendants' motion for a new trial; the second (No. 516) is by the same appellants, from the judgment; the third (No. 517) is by the plaintiff from the same judgment.

Under our views of the case, it is not necessary to consider many of the contentions made by defendants. There is a motion by each of the parties to dismiss the other's appeal from the judgment, but we do not think that either is well founded, and they are both denied. In our opinion, the demurrers of the defendants to the complaint should have been sustained on the grounds that it does not state facts sufficient to constitute a cause of action, and that the court had no jurisdiction of the subject-matter of the action.

The litigation grows out of an act of the legislature approved March 11, 1893 (Stats. 1893, p. 158), entitled "An act to create the county of Riverside," etc. By that act the new county of Riverside (plaintiff herein) was created partly out of the territory of the county of San Bernardino (defendant herein). By section 8 of the act, a board of five commissioners was created, to be appointed as therein provided. These commissioners were to ascertain "the indebtedness of San Bernardino County existing at the time this act takes effect, and also the total value of all property at that time belonging to San Bernardino County." They were also to ascertain the total assessed value of all property in San Bernardino County at the time the act took effect, and the assessed value of all property in the territory to be set apart to the new county of Riverside. They were also to find the difference between the existing indebtedness of the old county and the value of the property belonging to it; and if such indebtedness exceeded such value, then Riverside was to pay its proportion of such indebtedness to San Bernardino County, said proportion to be determined by a rule formulated in the act; but if, on the other hand, the value of the property belonging to the old county should exceed its indebtedness, then it should pay to Riverside the latter's proportion of such excess, in accordance with the formula provided as aforesaid. There are some other provisions touching the basis of settlement, not necessary to be here stated. The foregoing is a sufficient statement of that part of the act by which the board of commissioners was appointed. The com-

missioners, after the completion of their work, were to certify
the result to the boards of supervisors of the two counties.
Five commissioners were appointed, in accordance with the act,
and after the completion of their work they reported that a's
the result of their investigation there was a liability from San
Bernardino County to Riverside County in the amount of
$15,586.82. Riverside County, not considering this amount
sufficiently large, commenced this action.

It is averred in the complaint that several of the findings of
the commissioners which were adverse to plaintiff were against
the evidence. The two main findings which are thus alleged
to be wrong are these: 1. The commissioners found that the in-
debtedness of San Bernardino County was $163,719.29; and it
is averred that this was not the true amount, that it should
have been found to be only $40,139.42, and that the larger
amount was arrived at by including certain salaries and ex-
penses of county officers, which, plaintiff alleges, "upon infor-
mation and belief," were not "an indebtedness, within the
meaning of said act." 2. It was found that the total value of
the property belonging to San Bernardino County, when the
act took effect, was $213,526.98, whereas it is stated in the com-
plaint that "plaintiff is informed and believes, and therefore
alleges," that the said value was $465,487.20. It was also
averred, upon information and belief, that "the balance of the
property of said San Bernardino County" was estimated by
the commissioners at a sum greatly below its real value. It
was also averred, in general terms, that these alleged improper
findings were made fraudulently, and were the result of a con-
spiracy between the commissioners Barton, Brown, and Stamm,
constituting a majority of the board, and who are made de-
fendants, for the purpose of making an adjustment in such
manner as to defraud Riverside County out of her just rights
in the premises. The prayer is, — 1. That the commissioners
"be ordered and directed to readjust the said settlement" in
accordance with the views of plaintiff; and 2. That the
court itself adjust the accounts between the two counties, and
give plaintiff judgment against San Bernardino County for
$132,027.09, and "for such other and further relief," etc. The
court found mainly in accordance with the averments of the
complaint, and, following the first prayer, entered a decree
setting aside the acts of the commissioners, and sending the
whole matter back to them, with instructions to "readjust the

said settlement," and directing them to find, as to several matters in controversy, in a certain way, and differently from the former finding. The judgment is similar to judgments frequently entered by an appellate court when reversing a judgment, where there is a direct appeal authorized by law from the lower to the higher court.

It is clear that the particular judgment rendered in this case cannot stand. It is in the nature of a *mandamus;* and a *mandamus* never lies to compel a tribunal to perform in a particular way an act which involves the exercise of discretion and judgment. Moreover, the board of commissioners, having performed the functions for which it was created, is *functus officio*. Its authority was limited to one express object, and by its exercise it was exhausted.

It is contended, however, by plaintiff, in its appeal from the judgment, that the court itself should have taken hold of the matter, and rendered a judgment adjudicating and settling the questions between the two counties, and that this court should remand the cause for that purpose. It is said that "where the jurisdiction of a court of equity once attaches for any purpose, it will be retained for all purposes, and a final adjudication made of the matter." This may be admitted to be, as a general rule, true. But the difficulty here is to apply to the case at bar the first clause of the proposition, "where the jurisdiction of a court of equity *once* attaches." There is no magic in the phrase, "a court of equity." Such a court is not unconditioned and infinite. It is, after all, only a court, with such jurisdiction as the laws of the land give it; and when a thing is beyond the jurisdiction of any court, a court of equity can no more take hold of it than can a court of law. Now, it has, we think, been definitely settled in this state, as well as in some other states, that the whole matter of the divisions of counties and the creation of new ones, and what, if any, liability there shall be between a new county and the old one from which it has been carved, is, in its nature, political, and not judicial, and belongs wholly to the legislative department of the government. It is admitted that if an act creating a new county out of an old one says nothing about a division of property or liability, the old one must continue to shoulder all its existing indebtedness, and each piece of public property belongs to the county in which it happens to be situated, and in such case "the old county cannot maintain an action against

the new to recover any part of its existing indebtedness."
(*Tulare County* v. *Kings County*, 117 Cal. 195; see also cases
there cited, and *Laramie County* v. *Albany County*, 92 U. S.
307.)  There is therefore no legal liability between the two
counties, arising out of the mere fact that one has been carved
out of the other, which any court has jurisdiction to adjudi-
cate.  The legislature may, however, declare, in the act cre-
ating a new county out of the territory of an old one, that
certain public property shall belong to one or the other of the
counties, or that one shall pay a fixed sum to the other, or be
liable for a certain amount of indebtedness, and the liability,
when thus created by the legislature, could, no doubt, be en-
forced by the courts; or the legislature may provide that a
certain commission or tribunal, created for the express pur-
pose, may investigate and determine what the liability or
division of property shall be; and it may, by a subsequent act,
modify its former determination, and change the condition as
to liability, division of property, etc., upon which the original
act was passed.  (*People* v. *Alameda County*, 26 Cal. 642.)  In
such case, the commissioners appointed are the mere agents or
instrumentalities of the legislature, chosen to aid it in doing
what it might have done without them, and their acts are
wholly connected with the political department of the govern-
ment, and are as much beyond the reach of the judiciary as
the action of the legislature would have been if it had itself, in
the first instance, definitely fixed the actual liability of the
two counties.  There are no existing legal rights between the
two counties, arising out of contract, or otherwise, to be adju-
dicated by courts, as in cases of conflicts between individuals
arising out of the general law touching personal and property
rights.  Neither county has any right in the premises, except
that which is expressly created by the legislative act.  If the
legislature, in determining what rights it will give, employs
the instrumentality of a commission to aid it, the determina-
tion of the commission must stand, if the employer is satisfied
with it.  But the legislature can change whatever has been
done in the premises, either directly by itself, or indirectly by
its instrumentality; and therefore if one of the counties inci-
dentally affected thinks that it has been unjustly treated by
the commission, its complaint must be made to the legislature.
There is no appeal from the commission to a court provided for;
and, leaving out of sight the action of the commission, there

are no legal rights between the counties to be judicially adjudged or enforced.

The foregoing views are in accord with the decision of this court in *Orange County* v. *Los Angeles County*, 114 Cal. 390. Orange County had been created out of territory formerly belonging to Los Angeles County, and the act creating the new county was similar to the one in question in the case at bar. Commissioners had been appointed to adjust the rights created by the legislative act, and they were, among other things, to determine the amount of property and assets belonging to Los Angeles at the date of the act. In doing so they left out what was clearly an asset of Los Angeles County, amounting to over nineteen thousand dollars, and the suit was brought by Orange County to recover its proportion of that amount. A demurrer to the complaint was sustained in the lower court, and the judgment was here affirmed. The court, in its opinion, quoted from *Sedgwick County* v. *Bunker*, 16 Kan. 498, as follows: "Where a county is divided, the rule for the division and apportionment of the debts and property between such county and the detached territory belongs exclusively to the legislature, and not to the courts; and when the legislature has determined how the debts and property shall be divided and apportioned, the courts cannot interfere." The failure of the commission to include the said asset of Los Angeles County, as above stated, was the result of a mistake; and the court further said, "The mistake was one, however, which, in our opinion, can be corrected by legislative action alone, and not by the courts. The courts are without authority to adjust matters of this character between counties. We conclude, therefore, that the demurrer to the complaint was properly sustained, and that the judgment should be affirmed." Upon a petition for rehearing it was strongly urged that the decision was wrong in holding that "the courts cannot adjust matters between counties; it is a matter for legislative action only"; but the court, in Bank, denied the petition. The case was cited with approval in *Tulare County* v. *Kings County*, 117 Cal. 201, where it was again held that a determination of all matters between a new and an old county "is a legislative and not a judicial function." It was further held in the latter case that the provision of section 3 of article XI of the constitution, to the effect that a new county "shall be liable for a just proportion of the existing debts and liabilities" of the old one, still

left with the legislature the power to determine such just proportion, the court saying, "The whole subject of the wisdom and expediency of creating a new county is a matter addressed to the legislature; the question of what, if any, proportion of the debts of the old should be paid by the new county, with all other questions concerning division, is with the legislature." In the case of *People* v. *Alameda County*, 26 Cal. 642, the same principle was announced. Five years after the creation of Alameda County out of the territory of Contra Costa County, an act was passed appointing commissioners to determine what amount of money the former county should pay the latter. They fixed an amount, which Alameda County paid. But, four years later, the legislature, having determined that Alameda County should pay a further amount, passed another act, appointing another set of commissioners to determine what the additional amount should be, and provided that the board of supervisors of Alameda County should levy a tax to satisfy the amount which the commissioners should find. The commissioners found the additional amount to be $11,-574.20, and the board of supervisors of Alameda County having refused to levy a tax to pay it, a *mandamus* was issued by the superior court commanding them to levy the tax. An appeal was taken, and this court affirmed the judgment. Many points were made by appellant, and, among others, that the act appointing the commissioners, with power to adjust, etc., was unconstitutional, because an encroachment by the legislature upon the judicial department of the government. The case, therefore, covered nearly the whole subject of the power of the legislature in the matter of creating new counties. In answer to the constitutional objection, Sawyer, J., in delivering the opinion of the court, said: "It is objected that in appointing commissioners to ascertain and award the amount to be paid by Alameda County to Contra Costa County, the legislature conferred upon them judicial functions, and thereby usurped powers that, under the constitution, belong exclusively to the judicial department of the government. It will be observed that the money claimed was not a legal demand by one county against another, growing out of contracts or transactions between themselves, which could be litigated between them and enforced by suit in a court of justice. The claim, as between the counties, arose solely out of legislative action in creating the new county of Alameda, in part, out of the county

of Contra Costa, and wholly independent of the action of either county, as between themselves"; and further: "The legislature, then, may, in its discretion, determine the objects for which, and the extent to which, the taxing power shall be exercised, and may apportion the taxes to be levied. . In ascertaining the amount that ought equitably to be charged upon the different districts, as a guide to the exercise of this discretion, it may pursue its own methods, *and employ its own instruments. . . .* We think, therefore, the apportionment of the amount to be paid by the respective counties was not an encroachment upon the powers with which the judicial department is charged, within the meaning of the constitution."

In some of the other states, acts creating new counties have either referred adjustment between the counties directly to the courts, or have specially provided for appeals from commissioners. The decision of the supreme court of Texas in *Walker* v. *Tarrant County,* 20 Tex. 16, is directly in point, and in accord with the views above expressed; for, while the matter involved there was the location of a county seat, the principle announced applies equally to the creation of a county. The court there say: "The act of determining in what particular place in a county the courts shall be held, and the public records shall be kept, is the exercise of a political authority of the government pertaining to the legislature. It may be done directly, as by naming and identifying a place in the act; or it may be done indirectly, by making it depend upon a contingency, and *appointing an agent or agents* to determine upon that contingency, and to announce the result. Whether it be done the one way or the other, it, in all its parts, is no less an act pertaining to the political and not to the judicial authority. The legislature has the power to cause the place to be determined by one contingency as well as another, — by the locality of numerical population, of the property, of the tillable lands or good water, as well as by the qualified voters. If the agents which the legislature may employ do not correctly perform what is required of them, in determining any such contingency upon which it may be made to depend, *the department for complaint and redress is the legislature, that has employed such agent to perform its functions.*"

It is contended that *Orange County* v. *Los Angeles County,* 114 Cal. 390, is not authority here, because in that case a mistake of the commissioners was involved, while in the case at

bar there is an averment of fraud, and it is said that a court of equity has jurisdiction in all cases of fraud. A court of equity, however, has as complete jurisdiction in cases involving mistakes as in cases involving frauds; but it has not jurisdiction in either instance, unless it has jurisdiction over the subject-matter in connection with which the mistake or fraud occurred. The decision in *Orange County* v. *Los Angeles County*, 114 Cal. 390, did not rest on the ground that the particular averment there was mistake instead of fraud, but upon the ground that the whole subject-matter was for legislative action, and beyond judicial cognizance.

The case of *Los Angeles County* v. *Orange County*, 97 Cal. 329, cited by plaintiff, is not in point. In that case a demurrer to the complaint was sustained in the lower court, and judgment rendered for defendant, and on appeal the judgment was affirmed. The demurrer was solely upon the grounds of insufficiency of facts, and the statute of limitations. No question of jurisdiction was decided, or discussed, or raised. The decision merely determined the points presented by counsel, and passed upon the constitutionality and meaning of the act there under consideration, but in its opinion it expressed the same views as to the general subject of the creation of counties as those hereinbefore stated.

The judgment and order denying a new trial are reversed and the cause is remanded, with directions to the superior court to sustain the demurrers of defendants to the complaint and to dismiss the action.

Harrison, J., Garoutte, J., Van Dyke, J., and Henshaw, J., concurred.

TEMPLE, J., concurring.—I concur. Conceding, as claimed, that the act of the legislature has so definitely determined the equities and rights of the two counties that a court of equity would have been able to enforce the law and carry out the scheme if no commissioners had been provided, yet that provision itself makes so radical a change, that in case the commission refuses to act, the courts would have no jurisdiction in the premises. For instance, as written, the value of the property belonging to the county is not one of the factors in determining what either county is to pay the other, but the factor is the value of such property as determined by the commissioners.

Besides, by providing for a commission to determine which county shall pay the other, and how much, the legislature has denied the right to sue either county for the purpose of determining the amount.

It is conceded on all hands that the power of the state over these matters is plenary. It is dealing with public funds, and gives or withholds as it pleases, and it can manage these affairs through such agencies as it sees fit to adopt. The act places no obligation upon San Bernardino County until there is a finding or an award made by the commissioners, and then only the duty of complying with the award. It confers no right of action upon Riverside County, unless the right to enforce the award be such. On the other hand, as already suggested, it, in effect, prohibits such action, by confining the remedy to an award or finding to be made by a commission which performs purely political functions which the legislature could have performed itself.

Indeed, the act of the legislature is not a law in the ordinary sense. It declares no rule of action, but is itself a mere governmental act, affecting the government only, and as soon as the act is fully performed, the statute is *functus officio.* A part of this purely political act is the appointment and the action of the commissioners. If the court could set aside the determination, it could go no further, and in this connection it must be remembered no private rights are invaded. The matter is between two agencies of the state, both of which (in this matter) are completely under the control of the state.

Counsel for the county of Riverside rely greatly upon *Johnson* v. *Tousley,* 13 Wall. 72, and that line of cases, and contend that the commissioner of the general land-office, the registers and receivers, and the Secretary of the Interior, are just as clearly special tribunals for the decision of certain controversies as was the commission here, and yet the courts, it is said, have jurisdiction to correct errors of law committed by such tribunals. The commission created by the act under consideration here is not a tribunal created to determine any controversies, in a proper sense, and yet an examination of those cases will tend to show my position in this matter.

In no one of these cases has the court undertaken to do what the court is asked to do here, — to wit, set aside the action of the land department, order the patent canceled, and direct the department to reverse its rulings and issue the patent to

the party which the court finds should have had it. On the contrary, it is held that the court has no power to do so. What it does is simply to affirm the patent issued, and finding that it was issued to the wrong person through mistake or fraud, the patentee is declared an involuntary trustee for the person equitably entitled to it.

No such thing can be done here. To affirm the award is to find that plaintiff has no case. All that could be done, if relief could be had, and all that is sought, is, to have the court do the precise thing which in the entire line of cases cited on this point it is held cannot be done,— to wit, set aside the action of the political department, and compel the officers to perform their special functions as, in the opinion of the court, they ought to have performed them. · These cases, in my opinion, instead of sustaining the position of the plaintiff, manifest an entirely different view of the law, and render it still more evident that plaintiff cannot maintain its case.

Rehearing denied.