[Sac. No. 2361. In Bank.—January 14, 1916.]

## RECLAMATION DISTRICT No. 1500, Petitioner, v. SUPERIOR COURT OF SUTTER COUNTY et al., Respondents.

RECLAMATION DISTRICT NO. 1500—PUBLIC STATUTE—DUTIES IMPOSED ON DISTRICT ARE IMPOSED ON DISTRICT OFFICERS.—The act of April 30, 1913 (Stats. 1913, p. 130), creating Reclamation District No. 1500, is a public statute, and the duties imposed by the act upon the district are necessarily imposed upon the directing officers of the district.

ID.—TRUSTEES ARE OFFICERS OF LAW—INJUNCTION AGAINST EXECUTION OF STATUTE.—The trustees of Reclamation District No. 1500 are public officers of the state, and officers of the law within the meaning of subdivision 4, section 3420, of the Civil Code, and of section 526 of the Code of Civil Procedure, declaring that an injunction cannot be granted to prevent the execution of a public statute by officers of the law for the public benefit.

ID.—INJUNCTION AGAINST EXECUTION OF UNCONSTITUTIONAL STATUTE.— The provisions of such sections prohibiting the granting of an injunction to prevent the execution of a public statute are applicable only to the execution of valid statutes, and do not apply to the execution of statutes that are unconstitutional.

ID.—TITLE OF ACT—CONSTRUCTION OF LEVEES.—The provisions of the act of April 30, 1913, making it the duty of the reclamation district to construct protective levees along its boundaries, are within the scope of the subject matter indicated in that portion of the title of the act which states that the act is one "creating a reclamation district and providing for the management and control thereof."

ID.—SPECIAL ACT CREATING DISTRICT—LOCATION OF LEVEES—MANNER OF DOING WORK.—Reclamation districts may be created by special

act, and the legislature in passing such act is not bound to follow the procedure laid down in the general law governing such districts. It may adopt such procedure as it deems necessary or expedient, and may, without constitutional objection, make a location, in the act itself, of the lines of the proposed levees, and define the manner and plan by which the contemplated reclamation work shall be carried out.

Id.—County a Political Agency of State—Proprietary Interest in County Property.—A county is a mere political agency of the state; it holds its property on behalf of the state for governmental purposes, and has no private proprietary interest in such property as against the state.

Id.—Damage to County Property by Reclamation Work—State not Required to Make Compensation.—If the building of the levees contemplated by the act creating such reclamation district will or may injure or destroy buildings, roads, and bridges of the county of Sutter, the result will merely be an injury to or destruction of public property in the making of a public improvement authorized by the state itself. Such result does not render the act unconstitutional, as the state, damaging or taking its own property, is not required to provide compensation under the constitutional provision relative to eminent domain.

Id.—Prohibition—Action to Enjoin Execution of Statutes by Public Officers—Jurisdiction of Superior Court.—The superior court, in entertaining an application by the county of Sutter for an injunction restraining Reclamation District No. 1500 and its trustees from proceeding with the construction of certain levees in accordance with the act of April 30, 1913, exceeded its jurisdiction as limited by subdivision 4 of section 3423 of the Civil Code, and a writ of prohibition will lie to prevent the further prosecution of the action seeking such injunctive relief. The remedy by appeal in such action is not adequate.

APPLICATION for a Writ of Prohibition directed to the Superior Court of Sutter County, and K. S. Mahon, the Judge thereof, and Emmet Seawell, a Judge of the Superior Court presiding therein.

The facts are stated in the opinion of the court.

A. C. Huston, Harry L. Huston, and Devlin & Devlin, for Petitioner.

Arthur Coats, District Attorney, W. H. Carlin, Lawrence Schillig, and M. E. Sanborn, for Respondents.

SLOSS, J.—The petitioner has applied to this court for a writ prohibiting the respondents from taking any further proceedings in an action instituted in the superior court of Sutter County.

The action in question was instituted by the county of Sutter as plaintiff against Reclamation District No. 1500, the petitioner herein, its trustees and other parties, for the purpose of obtaining an injunction restraining said defendants from constructing certain levees or completing their construction. The complaint alleged that the construction of such levees would, at times of high water, flood a large tract of land which, under natural conditions, was not subject to inundation, and would destroy or injure the county courthouse, jail, hall of records, and grounds of Sutter County, as well as numerous bridges and many miles of highway belonging to said county. The petitioner herein, and its trustees, appeared in said action and objected to the issuance of any injunction upon the grounds that are now relied upon as justifying the writ of prohibition here sought. Notwithstanding their objections, the superior court issued a temporary injunction restraining the construction of the greater part of the levee work described in the complaint, and thereafter set the cause for trial. The petitioner now seeks to prohibit the further prosecution of the action, contending that the superior court is without jurisdiction to grant the relief sought therein.

Reclamation District No. 1500 was created by an act of the legislature approved April 30, 1913. (Stats. 1913, p. 130.) By section 1 of the act a reclamation district, to be known as Reclamation District No. 1500, was created and its boundaries were described. The same section contains the following provision: "It shall be the duty of said reclamation district No. 1500 to construct a levee, forming the south side of Tisdale by-pass, and a portion of the westerly side of the Sutter basin by-pass, the center line of which levee shall be substantially along the following lines, the same having been approved by the state reclamation board March 31st, 1913." (Here follows a description of the line of the levee.) The Tisdale by-pass mentioned in the act forms the northerly boundary of District No. 1500. The described levee line along a "portion of the westerly side of the Sutter basin by-pass" is the easterly boundary

of the district. This portion at its southerly end touches the left bank of the Sacramento River at a point known as Wild Irishman Bend, and the act declares "it shall be the duty of said reclamation district No. 1500 to continue the construction of a levee along the left bank of the Sacramento River, or adjacent thereto, from the said Wild Irishman Bend, up-stream, to the place of beginning." The Sacramento River, from said "place of beginning" on the Tisdale by-pass to Wild Irishman Bend, forms the westerly and southerly boundaries of the district, so that the levees described in the act would completely inclose the said district. The portion of the work sought to be enjoined is that bordering on the Tisdale by-pass and the Sutter basin by-pass. Section 2 of the act provides for the management and control of the district in accordance with the provisions of the Political Code, names five trustees who are to hold until the election and qualification of their successors, and declares that the district shall have the powers conferred by law upon reclamation and swamp-land districts and certain other powers. The remaining sections of the act have no bearing upon the questions here involved.

The property which, as the complaint in the injunction suit alleges, will be damaged by the construction of the levee is not within the boundaries of Reclamation District No. 1500. The petitioner's contention that the superior court is exceeding its jurisdiction in undertaking to restrain the acts complained of in the action pending before it is based upon the provisions of sections 3423 of the Civil Code and 526 of the Code of Civil Procedure. Each of these sections declares that "An injunction cannot be granted . . . (4) to prevent the execution of a public statute by officers of the law for the public benefit." The construction of the levee in question is, by the act creating the district, made the duty of the district, and it is contended that an injunction which restrains the performance of this duty comes directly within the terms of the code sections cited.

It will not be questioned that the act which creates Reclamation District No. 1500 is a public statute. It is equally clear that the construction of the levees designated in the act constitutes the execution of such public statute. The injunction complained of restrains the district and its trustees from proceeding with the erection of such levees.

The statute does not in terms impose the duty of building the levees upon the trustees. Such construction is declared to be the duty of the district. But since a corporation, public or private, can act only through its officers or agents, the statutory imposition of a duty upon the district necessarily imposes the duty upon the directing officers of the district. We need not, therefore, inquire whether the reclamation district, as such, may be regarded as an "officer of the law" within the meaning of section 3423 of the Civil Code. It is enough if the trustees who are parties defendant in the injunction suit answer that description. The officers of an irrigation district have been held to be public officers of tho state (*In re Madera Irr. Dist.*, 92 Cal. 296, 322, [27 Am. St. Rep. 160, 14 L. R. A. 755, 28 Pac. 272, 675]), and the trustees of the reclamation district created by the act of 1913 occupy an analogous position. They are officers of the law within the meaning of the code section under discussion. That section declares that an injunction cannot be granted to prevent the execution of a public statute by officers of the law *for the public benefit*. If the statute creating Reclamation District No. 1500 is valid at all, its provisions must be deemed to have been enacted for the public benefit. (*People v. Sacramento Drainage Dist.*, 155 Cal. 373, [103 Pac. 207]; *Heffner* v. *Cass and Morgan Counties*, 193 Ill. 439, 450, [58 L. R. A. 353, 62 N. E. 201].)

The argument, in any case, against the validity of an injunction issued to restrain the execution of a statute, rests, of course, on the premise that the statute in question is a valid exercise of the legislative power. An act of the legislature which is in conflict with the constitution is no statute at all. It "is utterly void, has no force or legal existence. . . . " (*Wheeler* v. *Herbert*, 152 Cal. 224, 228, [92 Pac. 353].) The provisions of section 3423, subdivision 4, of the Civil Code, "refer solely to injunctions against the execution of valid statutes." (*Wheeler* v. *Herbert*, 152 Cal. 224, [92 Pac. 353].)

The respondents attack the validity of the act creating Reclamation District No. 1500, and the soundness of their contentions in this regard must be examined. The title of the act is as follows: "An act creating a reclamation district to be called and known as 'Reclamation District No. 1500'; providing for the management and control thereof and dissolving

all levee districts, swamp land districts, and reclamation districts, lying wholly within the boundaries of said Reclamation District No. 1500, providing for the liquidation and winding up of said dissolved districts, and excluding from any levee district, swamp land district and reclamation district any land lying within the boundaries of said Reclamation District No. 1500.'' The main contention of the parties attacking the validity of the law is that the provision making it the duty of the district to construct certain levees deals with a subject which is not suggested by the title of the act, and that this provision, therefore, must fall because of the terms of article IV, section 24, of the constitution. That section reads: ''Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title.'' The constitutional provision respecting the titles of acts has frequently been the subject of construction by this court. It is thoroughly settled that the provision is to be liberally construed with a view to effecting the object of the provision, viz., to prevent the passage of acts bearing deceitful and misleading titles. (*Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251].) ''It is not necessary that the title of an act should embrace an abstract or catalogue of its contents.'' (*Abeel* v. *Clark,* 84 Cal. 226, 229, [24 Pac. 383].) ''When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents.'' (*Ex parte Liddell,* 93 Cal. 637, [29 Pac. 251]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, [103 Pac. 207].) The title of the present act states, among other things, that it is an act creating a reclamation district and providing for the management and control thereof. These words indicate plainly that the act is designed to erect a district for the purpose of reclaiming lands lying within its borders, and to prescribe the mode of managing and controlling such districts. Lands may be reclaimed by protecting them from overflow; and the most usual method of accomplishing this result is to surround the lands with levees. How, then, can it be argued that a provision that protective levees shall be constructed along the boundary of the proposed reclamation district is not within the scope or the purposes contemplated in the creation of the

district, or that such provision is not suggested by the title of an act which declares that its purpose is the creation, management, and control of such reclamation district? It is true that the act contains provisions relating to certain levee work beyond the boundaries of the district, but this work is not involved in the injunction suit. If the provision requiring this exterior construction is invalid—we are not to be understood as intimating that it is—the county of Sutter is not claiming to be affected by it and is in no position to attack it.

One ground of objection urged by respondents is that while, under the provisions of the Political Code relative to reclamation districts, the location of the levees and other details of the plans of reclamation are committed to the board of trustees (Pol. Code, sec. 3454), the present act by its own terms provides for the location of the levees. But since, as is well settled, districts of this kind may be created by special act (*People* v. *Levee District,* 131 Cal. 30, [63 Pac. 676] ; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, [103 Pac. 207]), the legislature in passing such act is not bound to follow the procedure laid down in the general law governing reclamation districts. It may adopt such procedure as it deems necessary or expedient, and there can be no constitutional objection to a location, in the act itself, of the lines of the proposed levees.

The petition herein refers to other acts of the legislature (and an act of Congress), which contemplate the formation and adoption of a plan for the general control of flood conditions in the Sacramento Valley under the joint direction of the federal and state governments. These acts are pointed to as indicating the reason for the direction in the present act that the levees be located as they are, such location being a part of the general plan referred to. We do not find it necessary to refer in greater detail to these matters, for the reason that, as already stated, we think it entirely within the power of the legislature, in creating a reclamation district by special act, to define the manner and plan by which the contemplated reclamation work shall be carried out. It becomes unnecessary, therefore, to consider the question whether the other acts referred to, i. e., the one creating the reclamation board (Stats. 1911, Special Session, p. 117) and the one approving the plan of the California Debris Commission

(Stats. 1913, p. 252), are open to attack as containing an unconstitutional delegation of power by the legislature.

But the respondents argue that the action is one to restrain the commission of acts which will constitute a taking of the property of Sutter County, the plaintiff in the injunction suit, and that any statute which purports to authorize such taking without compensation is a violation of familiar constitutional restrictions. (Const., art. I, sec. 14.) *Payne* v. *English,* 79 Cal. 540, [21 Pac. 952], was an action to enjoin the harbor commissioners of San Francisco from entering upon certain land claimed by the plaintiff and erecting a wharf thereon. The defendants objected to the issuance of an injunction upon the ground that they were authorized by statute to construct wharves, and that subdivision 4 of section 3423 of the Civil Code prevented the issuance of an injunction against the execution of a public statute. To this contention the court responded briefly: ''There is no public statute, or other law, which authorizes defendants to take plaintiffs' land, at least without proceedings under the power of eminent domain.'' See, also, *Pierce* v. *City of Los Angeles,* 159 Cal. 516, [114 Pac. 818].) The constitutional provision above referred to declares that ''private property shall not be taken or damaged for public use without just compensation having been first made to . . . the owner.'' The public building, roads, and bridges of a county are not the private property of the county in such sense as to authorize the county to object to the taking or damaging thereof by the state for public purposes. The counties are governmental agencies of the state (*County of San Mateo* v. *Coburn,* 130 Cal. 631, [63 Pac. 78, 621]), and the property intrusted to their governmental management is public property. The proprietary interest in all such property belongs to the public, and if there be a legal title in the county, it is a title held in trust for the whole public. (*Board of Education* v. *Martin,* 92 Cal. 209, [28 Pac. 799] ; *People* v. *Holladay,* 93 Cal. 241, [27 Am. St. Rep. 186, 29 Pac. 54] ; *Heffner* v. *Cass and Morgan Counties,* 193 Ill. 439, [58 L. R. A. 353, 62 N. E. 201].) In the absence of constitutional restrictions, the legislature has full control of the property held by the counties as agencies of the state, and may dispose of that property without the consent of the county or without compensating it. (*City of Edwardsville* v. *County of Madison,* 251

Ill. 265, [37 L. R. A. (N. S.) 101, 96 N. E. 238].) Upon analogous principles, it has been established by a long line of decisions, in this state as well as elsewhere, that, except as restrained by constitutional limitations, the legislature may alter the boundaries and extent of counties at will, may consolidate two or more into one, or divide and create new counties out of the territory of counties already existent. "Upon the creation of a new county out of the territory of another, the legislature, in the absence of constitutional restrictions, may make such provision with reference to the public property and debts, or their division, as to it may seem just. . . . " (*Los Angeles County* v. *Orange County,* 97 Cal. 329, [32 Pac. 316]; *Orange County* v. *Los Angeles County,* 114 Cal. 390, [46 Pac. 173]; *Tulare County* v. *Kings County,* 117 Cal. 195, [49 Pac. 8]; *Colusa County* v. *Glenn County,* 124 Cal. 498, [57 Pac. 477]; *Riverside County* v. *San Bernardino County,* 134 Cal. 517 [66 Pac. 788]; *Laramie County* v. *Albany County,* 92 U. S. 307, [23 L. Ed. 552].) So, too, this court has held that the legislature may transfer the property of one reclamation district (*Reclamation Dist.* v. *Birks,* 159 Cal. 233, [113 Pac. 170]), or one school district (*Pass School Dist.* v. *Hollywood City School Dist.,* 156 Cal. 416, [20 Ann. Cas. 87, 26 L. R. A. (N. S.) 485, 105 Pac. 122]), to another without compensation. All of these rulings are founded upon the proposition that the county (or reclamation or school district) is a mere political agency of the state, that it holds its property on behalf of the state for governmental purposes, and that it has no private proprietary interest in such property as against the state. Applying the doctrine to the present case, it is clear that if the building of the levees contemplated by the act creating the petitioner will or may injure or destroy buildings, roads, and bridges of the county of Sutter, the result will merely be an injury to or destruction of public property in the making of a public improvement authorized by the state itself. The state, damaging or taking its own property, is not required to provide compensation under the constitutional provision relative to eminent domain.

These views are in no wise inconsistent with the recognition of a sufficient title in the counties to justify their maintaining actions against private persons or corporations injuring roads or other public property. That such actions may be maintained is the full extent of the holding in cases like

*Sierra County* v. *Butler,* 136 Cal. 547, [69 Pac. 418], and
*Yuba County* v. *Kate Hayes Min. Co.,* 141 Cal. 360, [74 Pac.
1049], cited by respondents. Nor is there any conflict be-
tween our present holding and the decision in *Grogan* v. *San
Francisco,* 18 Cal. 590, 615, where the court was considering
the status of land held by the municipality in its proprietary
right. We are here dealing only with property held by a
county in its governmental capacity for public purposes.

The act being constitutional and the injunction sought be-
ing one which contravenes the prohibition of section 3423 of
the Civil Code, there still remains the question whether the
superior court, in entertaining the application for such in-
junction, is exceeding its jurisdiction and thus laying the
foundation for a writ of prohibition. Such writ will not go
to restrain mere errors by the court below. It is only an
excess of jurisdiction which may be reached in this manner.
This court has held, in *Wright* v. *Superior Court,* 139 Cal.
469, [73 Pac. 145], that a writ of prohibition would issue to
arrest the action of a superior court which was undertaking
to enjoin an action pending in another court in violation of
the first subdivision of section 3423 of the Civil Code. In
*Glide* v. *Superior Court,* 147 Cal. 21, [81 Pac. 225], a similar
writ was based on the seventh subdivision of section 3423,
which provides that an injunction cannot be granted "to pre-
vent a legislative act by a municipal corporation."

Section 3423 of the Civil Code does not, in all of its provi-
sions, establish new rules for the granting or denying of pre-
ventive relief in equity. Some of the subdivisions are merely
declaratory of principles which, in the absence of statute,
were and are generally held to govern courts of chancery in
determining what causes are proper subjects of equitable
cognizance. Subdivision 1 is more than declaratory. It
establishes a rule; it limits the right to issue injunctions as
that right was understood in the English and American court
before the adoption of our codes. The constitution of this
state gives to the superior courts original jurisdiction "in all
cases in equity." To the argument that this jurisdiction
could not be limited by statute, this court said in *Spreckels*
v. *Hawaiian etc. Co.,* 117 Cal. 377, [49 Pac. 353], and in
*Wright* v. *Superior Court,* 139 Cal. 469, [73 Pac. 145], that
subdivision 1 of section 3423 was an exercise of the legislative
power to define the rights of persons. It did not limit the

power of courts of equity to issue an injunction wherever the complainant was entitled thereto, but so operated on the complainant as to take away his right in certain cases to this form of relief. In the Wright case where, as we have said, a writ of prohibition was issued, the court held that the superior court was without jurisdiction to issue an injunction in a case in which such relief is forbidden by subdivision 1 of section 3423. The dissenting opinion of Shaw, J., took the ground that if, as the court held, the subdivision merely regulates the rights of persons, the issuance of a writ of injunction contrary to the statutory declaration is an erroneous determination that a cause of action exists rather than an excess of jurisdiction. Whatever force this criticism may have, it is not applicable to the provision of subdivision 4 of section 3423. For here, in the subdivision declaring that injunction does not lie to restrain the execution of a legislative act by public officials, we have the enunciation of an old and generally recognized rule of equity jurisdiction.

This rule, like that of subdivision 7, which was involved in *Glide* v. *Superior Court*, 147 Cal. 21, [81 Pac. 225], has its underlying basis in the division of the activities of government into three separate and independent departments, each of which is, in the exercise of its own peculiar functions, free from the control of either of the others. (5 Pomeroy's Equity Jurisprudence, sec. 327.) The power to enjoin officers from enforcing a statute, even where the statute was claimed to be unconstitutional, has been denied in some cases. (*Kneedler* v. *Lane*, 45 Pa. St. 238; *Thompson* v. *Commissioners of Canal Fund*, 2 Abb. Pr. (N. Y.) 248.) This court has not carried the doctrine so far. The prohibition against enjoining the execution of statutes has been held to apply only to valid statutes. (*Wheeler* v. *Herbert*, 152 Cal. 224, [92 Pac. 353].) But, at least as so limited, the rule is generally recognized. In *Southern Oregon Co.* v. *Quine*, 70 Or. 63, [139 Pac. 332], the court said: "We think the law is fixed, beyond cavil, that courts of equity have no power by injunction to restrain a public officer from performing an official act that he is required by valid law to perform. It is not sufficient to clothe the court with jurisdiction to say simply that, unless the court extends its restraining hand, hardships will follow, or irreparable damage will ensue, because the officer delegated to execute such law may act unwisely

or injuriously to the party seeking relief. The acts must be such as are without the sanction of a sound law." (See, also, *Southern Min. Co.* v. *Lowe,* 105 Ga. 352, [31 S. E. 191]; *Mendenhall* v. *Denham,* 35 Fla. 250, [17 South. 561]; *Inhabitants of Greenville* v. *Seymour,* 22 N. J. Eq. 458.)

Even though the lower tribunal is about to exceed its jurisdiction, the writ of prohibition will not lie where there is "a plain, speedy and adequate remedy in the ordinary course of law." (Code Civ. Proc., sec. 1103.) It is true that in the case at bar the petitioner might by appeal review the correctness of any judgment or order enjoining it, but we do not think that such appeal would, under the circumstances here described, be an adequate remedy. (*Glide* v. *Superior Court,* 147 Cal. 21, [81 Pac. 225].) To say nothing of the burden and expense of a trial of issues which, as we have seen, are not properly triable in the superior court, it may be observed that the preliminary injunction already issued ties the hands of the petitioner and that an appeal from such injunction would not affect its operative force pending the appeal. If the petitioner is entitled to proceed with the work of building the levees which the statute commands it to build, an appeal would obviously not give adequate relief.

We have considered this proceeding as if it had been submitted upon an agreed statement of facts. The respondents have demurred to the petition and have also filed an answer. For the reasons hereinbefore stated, the demurrer should be overruled. The answer does not raise any issue which we regard as material. There is, therefore, no occasion for the determination of any issue of fact, and the application should be finally disposed of at this time.

It is ordered that a peremptory writ of prohibition issue as prayed.

Shaw, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.